Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us. Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
January 22, 2018

**2018 CO 4**

**No. 13SC1017, <u>People v. Bueno</u>—Motion for New Trial—Evidence.**

In this case, the supreme court considers two questions. The first is whether a Crim. P. 33(c) motion for a new trial is time-barred because it was filed more than one year after the defendant's conviction, and thus arguably more than one year after "entry of judgment." The second is whether the trial court erred in granting a new trial after concluding that the prosecution violated <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), by failing to provide to the defense evidence that the prosecution had obtained at the outset of the investigation until after the defendant's conviction. The supreme court holds that "entry of judgment," for the purposes of Rule 33(c), does not occur until both a verdict or finding of guilt and the imposition of a sentence. And the supreme court concludes that, applying <u>Brady</u>'s disclosure requirements, the trial court did not abuse its discretion in granting a motion for a new trial.

## The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

---

### 2018 CO 4

---

### Supreme Court Case No. 13SC1017
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 10CA2114

---

#### Petitioner:

The People of the State of Colorado,

v.

#### Respondent:

David Bueno.

---

### Judgment Affirmed
*en banc*
January 22, 2018

---

**Attorneys for Petitioner:**
George H. Brauchler, District Attorney, Eighteenth Judicial District
David C. Jones, Senior Deputy District Attorney
Jennifer Gilbert, Deputy District Attorney
  *Centennial, Colorado*

**Attorneys for Respondent:**
Douglas K. Wilson, Public Defender
Karen N. Taylor, Deputy Public Defender
  *Denver, Colorado*

**JUSTICE BOATRIGHT** delivered the Opinion of the Court.

¶1 A jury found David Bueno, a state-prison inmate, guilty of first-degree murder and conspiracy in a case concerning a white inmate's death. The case took more than two months to try, involved hundreds of motions, and generated tens of thousands of pages of discovery. Fifteen months after Bueno's conviction—but before he was sentenced—the prosecution disclosed, as relevant here, two reports that had been in its possession since the first days of the investigation. One report documented the discovery of a note found on the day of the murder indicating that white supremacists were planning to murder white inmates in the prison. The other evinced a detective's suspicion that the murder was linked to another homicide that had been committed in the prison a few days later. Arguing that this belated disclosure violated Brady v. Maryland, 373 U.S. 83 (1963), Bueno moved for a new trial under Crim. P. 33(c). The trial court, which had presided over the entirety of this case, found a discovery violation and determined that a new trial was warranted. A division of the court of appeals affirmed in a split opinion.

¶2 This appeal requires us to address two questions. The first is whether Bueno's Rule 33(c) motion was time-barred because he filed it more than a year after his conviction, and thus arguably more than a year after "entry of judgment." The second is whether the trial court erred in concluding that the prosecution violated Brady's disclosure requirement, and specifically, whether the trial court abused its discretion in concluding that the evidence at issue was material and that the prosecution violated Crim. P. 16.

¶3    As to the first issue, we hold that "entry of judgment" for purposes of Rule 33 occurs after delivery of a verdict of guilt and imposition of a sentence.  Hence, because Bueno filed his Rule 33 motion before the trial court sentenced him, we conclude that he filed the motion before entry of judgment, meaning it was not time-barred.  As to the second issue, we conclude that the trial court applied appropriate legal standards in ruling on Bueno's <u>Brady</u> claim, and we perceive no clear error in the trial court's factual findings.  Accordingly, we determine that the trial court did not abuse its discretion in ordering a new trial, and we affirm the judgment of the court of appeals.

## I.  Facts and Procedural History

¶4    Michael Snyder, a white inmate at the Limon Correctional Facility ("LCF"), told his wife in a recorded phone conversation that he had been ordered to stab another inmate.  The next day, Jeffrey Heird, another white inmate at LCF, was found stabbed to death in his cell.  Snyder would later tell investigators that Heird was the man he had been ordered to kill.

¶5    Immediately after the discovery of Heird's body, an inmate found a piece of paper in the showers that read, "Killers Beuno [sic] and Alehanro [sic]! 1st and 2nd teirs [sic]."  That same evening, Linda Deatrich, a nurse at LCF, discovered a second note commingled with inmate requests for medical appointments.  The parties call that note "the ABN Letter."  The ABN Letter detailed threats by a white supremacist group to kill "men of the white race who refuse to accept their proud race," identified two inmates to carry out the executions, and named three white inmates at LCF as targets.  Neither

Bueno nor Snyder was named in the ABN Letter as one of the putative executioners, and Heird's name was not among the potential victims.

¶6 Within approximately twenty minutes of her discovery, Deatrich wrote a report, attached a copy of the ABN Letter to it, and filed the two documents together as an incident report with LCF; the parties call this "the Deatrich Report." About an hour after Deatrich discovered the ABN Letter, a prosecutor named Robert Watson from the district attorney's office arrived at LCF to provide legal counsel for the investigation. By the time Watson left the next morning, he had collected a copy of the Deatrich Report. It is undisputed that Watson's working file contained the Deatrich Report and that the prosecutors possessed it from the day after the murder. Both this report and a copy of the note found in the shower were included in a packet that investigators at LCF received at a briefing the morning after Heird's murder.

¶7 Two days after Heird's murder, David Hollenbeck, one of the inmates listed as a target in the ABN Letter, suffered cardiac distress and later died. Lieutenant Tim Smelser, one of the LCF investigators working on Hollenbeck's case, explained in his incident report that the injury that killed Hollenbeck was "predominantly caused by blunt trauma to the chest," indicating that Hollenbeck had likely been murdered. Smelser was concerned at the time that Heird's murder and Hollenbeck's suspicious death were connected because of the ABN Letter. Smelser conveyed his concerns in a report he prepared three days after Hollenbeck's death, which the parties call "the

4

Smelser Report."[1]  Smelser gave his report to the officers assigned to investigate Heird's murder.

¶8     The investigation of Heird's murder focused on the men named in the note found in the shower: Bueno and Alejandro Perez.   Almost one year into the investigation and prior to charging Bueno, Watson left the district attorney's office.  The trial court found that Watson left his working file regarding the homicide—which contained, among other documents, the Deatrich Report—at the prosecutor's office. Ultimately, the People charged Bueno, Perez, and Perez's cellmate, Michael Ramirez,[2] for Heird's death.

¶9     Bueno's and Perez's cases proceeded through motions and trial separately.[3] Bueno's defense team settled on an alternate-suspect theory of defense.  During the three-plus years Bueno's case was litigated, Bueno's defense team repeatedly sought discovery from the prosecutors of any evidence related to four white inmates at LCF whom the defense had identified as alternative suspects, including Snyder, who, as previously noted, told his wife he had been ordered to stab a white inmate the day before Heird's murder.   In response to each discovery request, the prosecution represented that it had disclosed all evidence favorable to the defense, including all evidence related to the alternative suspects.  Well in advance of trial, the prosecution

---

[1] The parties do not relate and the record does not clarify what, if any, further action investigators took regarding Hollenbeck's death.

[2] After Bueno was found guilty, Ramirez pleaded guilty to tampering with physical evidence, a class-six felony, and being an accessory to crime (murder), a class-four felony.  He was sentenced to serve two years in prison and four years of probation.

[3] Perez's case was transferred to a different venue.

had informed the defense of the note found in the shower and of Snyder's statement that he had been ordered to kill a white inmate. Despite its representation of full disclosure, however, the prosecution did not turn over the Deatrich or Smelser Reports prior to trial.

¶10　　In its search for evidence related to the alternative suspects, the defense team sought access to five years' worth of incident report files at LCF, which encompassed time periods both before and after the murder, involving the use or possession of shanks in the prison. In response to Bueno's motion requesting discovery of those incident report files, the prosecution contended that the reports were irrelevant to the case. Eventually, the defense obtained access to the files at LCF, and there it searched 9,600 incident reports for all incidents involving the use or possession of shanks at LCF for the five-year period. Although the Deatrich and Smelser Reports were among the 9,600 incident reports, the defense did not find them in that search.

¶11　　The case went to trial nearly four years after Heird's murder, and the prosecution sought the death penalty. The identity of Heird's killer was the core issue at trial, with Bueno arguing that white supremacists had committed the murder. The trial lasted more than two months. After four days of deliberation and having received a special instruction from the court on how to overcome a deadlock, the jury returned guilty verdicts on the conspiracy and first-degree murder charges. The jury declined to impose the death sentence. For reasons not documented in the record provided to us, the trial court did not impose a sentence, and Bueno remains unsentenced at this time.

6

¶12    Two months after Bueno's conviction, the Perez defense team gave Bueno's defense team the Deatrich and Smelser Reports. Bueno did not have these documents prior to this time. Bueno's team did not file a Rule 33(c) motion or otherwise use the evidence in the months immediately following his conviction.[4]

¶13    One year after the Perez defense team gave the reports to Bueno's defense team, the judge conducting Perez's trial ordered the prosecution to produce former prosecutor Watson's working file to the trial court for in camera review.[5]    After producing that file, which included copies of the Deatrich and Smelser Reports, to the judge in the Perez case, prosecutors disclosed, for the first time, copies of those two reports from Watson's working file to Bueno. The People do not dispute that the prosecution possessed both of these reports within days of Heird's murder but did not provide copies of them to Bueno until five years later.

¶14    A week after prosecutors provided Bueno with copies of this evidence, Bueno moved for a new trial based on newly discovered evidence under Rule 33(c).

---

[4] The two defense teams entered into an evidence-sharing agreement that prohibited the use or disclosure of evidence shared under the agreement until it became public through use by the disclosing party or the prosecution. Bueno justifies his delayed Rule 33(c) motion for new trial on this agreement. The People counter that such agreements cannot contravene the Rules of Criminal Procedure, and that Bueno's thirteen-month delay from the date Perez's defense team shared the Deatrich and Smelser Reports violated the charge in Rule 33(c) to file motions based on newly discovered evidence "as soon after entry of judgment as the facts supporting it become known to the defendant." Because we conclude that Bueno filed his motion before he was sentenced—and thus, before entry of judgment—we need not address this dispute.

[5] The parties do not explain and the trial court here did not make a record as to why the judge in Perez's case was aware of Watson's working file or why it needed to examine it in camera.

7

Specifically, Bueno alleged that the prosecution's failure to disclose the Deatrich and Smelser Reports violated Brady's disclosure requirements. The prosecution countered that Bueno's motion was time-barred under the plain language of Rule 33(c) because he had filed it more than fifteen months after the jury found him guilty. And even if the motion was timely, the prosecution argued, the evidence was made available to the defense because the defense team had access to the reports prior to trial. Hence, those reports could not constitute newly discovered evidence. Finally, the prosecution argued that the reports were not material for Brady purposes.

¶15 After conducting an evidentiary hearing on the alleged Brady violation, the trial court found that the prosecution had possessed this evidence from the inception of the investigation, that "a conscious decision was made at some point early in this case to keep the information from the Defendant by separating these documents from the balance of Watson's working file," and that this suppression "could have significantly impacted the outcome" of Bueno's trial. Based on these findings, the trial court concluded that the prosecution had violated the disclosure requirements under Brady and Crim. P. 16(I)(a)(2). Accordingly, the trial court granted Bueno's motion and ordered that he receive a new trial.

¶16 The People appealed, and a division of the court of appeals affirmed in a split opinion. People v. Bueno, 2013 COA 151, ¶ 30, __ P.3d __. As pertinent here, the majority affirmed the trial court's determination that the prosecution had committed a Brady violation, id. at ¶¶ 26–29, while the dissent concluded that the evidence was not material for Brady purposes and thus that there was no Brady violation, id. at ¶¶ 31–33.

8

The entirety of the panel agreed that Bueno's Rule 33(c) motion was timely. Id. at ¶¶ 23, 31. The People then petitioned this court for review, and we granted certiorari.[6]

¶17 Our task now is to resolve whether Bueno's motion for a new trial was time-barred and, if not, whether the trial court abused its discretion in granting that motion. To do so, we must discuss two related areas of law: Rule 33(c) motions for new trial and Brady disclosure standards.

## II. Standard of Review

¶18 "This court has plenary authority to promulgate and interpret the rules of criminal procedure." People v. Steen, 2014 CO 9, ¶ 10, 318 P.3d 487, 490 (citing Colo. Const. art. VI, § 21). As such, we review constructions of the rules of criminal procedure de novo, employing the "same interpretive rules applicable to statutory

---

[6] We granted certiorari to review the following issues:

1. Whether, as Crim. P. 16(I)(a)(2) requires prosecutors to "disclose" material that tends to negate the accused's guilt, that requirement is satisfied where the prosecution possesses a copy, and the defense team reviews the material at the investigating police agency but does not seek to obtain a copy.
2. Whether, as Crim. P. 33(c) requires a motion for new trial based on newly discovered evidence to be filed as soon after "entry of judgment" as to facts supporting it become known, "entry of judgment" occurs when the court accepts the jury's guilty verdict, or whether it does not occur until sentencing—such that the defense can delay filing the motion—if the defendant has yet to be sentenced.
3. Whether, in Colorado, where a court may grant a motion for new trial based on newly discovered evidence only if the evidence, if presented at a new trial, would "probably" produce an acquittal, a court can grant such a motion without reciting that standard and without making findings that would satisfy that standard.

construction." People v. Corson, 2016 CO 33, ¶ 44, 379 P.3d 288, 297 (quoting Kazadi v. People, 2012 CO 73, ¶ 11, 291 P.3d 16, 20).

¶19 Our review of a trial court's ruling on a motion for new trial, however, is more constrained. A trial court's decision to grant or deny a new trial is a matter entrusted to the court's discretion. People v. Wadle, 97 P.3d 932, 936 (Colo. 2004). A trial court abuses its discretion if its decision is manifestly unreasonable, arbitrary, or unfair, see People v. Lee, 18 P.3d 192, 196 (Colo. 2001), or "if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence," Wadle, 97 P.3d at 936.

¶20 "In ruling on a motion for new trial . . . trial courts are regularly called upon to resolve questions of fact and apply standards of law." Id. A Brady claim presents such a mixed question of law and fact. Smith v. Sec'y of N.M. Dep't of Corr., 50 F.3d 801, 827 (10th Cir. 1995); see also Salazar v. People, 870 P.2d 1215, 1224 (Colo. 1994) (resolving a Rule 16 claim against the backdrop of Brady). When reviewing a mixed question of law and fact, this court reviews the trial court's findings of fact for clear error and its conclusions of law de novo. People v. Arapu, 2012 CO 42, ¶ 17, 283 P.3d 680, 684. A trial court clearly errs if its finding is without support in the record. See id. at ¶ 46, 283 P.3d at 689.

## III. Crim. P. 33(c) Motions for New Trial

¶21 We must first resolve whether Bueno timely filed his motion under Rule 33(c). This issue presents a specific question: Whether the phrase "entry of judgment" in Rule

10

33(c) encompasses a verdict or finding of guilt alone, or whether judgment does not enter until imposition of a sentence.

¶22 Rule 33(c) affords criminal defendants the opportunity to move for a new trial "in the interest of justice" if (1) the defendant produces newly discovered evidence, or (2) for some other reason the defendant believes a new trial is warranted. Crim. P. 33(c). The rule sets forth separate timelines for each type of motion:

- Motions predicated on newly discovered evidence "shall be filed as soon after <u>entry of judgment</u> as the facts supporting it become known to the defendant."

- Alternatively, "[a] motion for a new trial other than on the ground of newly discovered evidence shall be filed within 14 days after <u>verdict or finding of guilt</u> or within such additional time as the court may fix during the 14-day period."

<u>Id.</u> (emphases added).

¶23 Thus, by Rule 33(c)'s plain language, "entry of judgment," which triggers the timing for a motion based on newly discovered evidence, is different from a "verdict or finding of guilt," which triggers the timing for a motion based on another ground. Recognizing this textual distinction, the division below persuasively reasoned that the two different phrases must have different meanings. <u>Bueno</u>, ¶ 21 (citing <u>Carlson v. Ferris</u>, 85 P.3d 504, 509 (Colo. 2003) (articulating this interpretive canon)). We agree. Because Rule 33(c) creates two distinct timing mechanisms—one that begins running after "entry of judgment" and the other that begins running after "verdict or finding of guilt"—the phrase "entry of judgment" must refer to more than a verdict or finding of guilt.

11

¶24 In other words, "entry of judgment" must be more than a "verdict or finding of guilt" alone. Otherwise, the rule would have used a "verdict or finding of guilt" to trigger the timing for both types of motions. We therefore decline to adopt the People's argument that entry of judgment occurs when the court accepts the jury's verdict, because to do so would render the difference between the terms meaningless. See Pineda-Liberato v. People, 2017 CO 95, ¶ 39, 403 P.3d 160, 166 (noting that we do not "interpret statutory provisions so as to render any of their words or phrases meaningless").[7] Thus, we hold that "entry of judgment" for purposes of Rule 33(c) does not occur until both a verdict or finding of guilt and the imposition of a sentence.

¶25 Applying this holding here, we conclude that Bueno's motion for a new trial was not time-barred. Bueno has not yet been sentenced; therefore, he filed his motion based on newly discovered evidence before entry of judgment. As such, Bueno filed his motion ahead of the deadline Rule 33(c) prescribes.

¶26 Accordingly, we conclude that Bueno's motion was timely filed. Having determined that Bueno timely filed his Rule 33(c) motion, we turn to the merits of his Brady claim.

---

[7] Adopting the People's argument would also contradict our previous explanation that "judgment" means more than just a verdict or finding of guilt: "The judgment in a criminal case includes imposition of the sentence." People v. Campbell, 738 P.2d 1179, 1181 (Colo. 1987) (relying on the definition of "judgment" in Crim. P. 32(b)(3) to construe Crim. P. 35), superseded by statute on other grounds, § 16-12-102, C.R.S. (2017), as recognized in People v. Blagg, 2015 CO 2, ¶ 14, 340 P.3d 1137, 1141.

## IV. The Brady Claim

### A. Law

¶27 The U.S. and Colorado Constitutions guarantee a defendant due process of law. U.S. Const. amends. V, XIV; Colo. Const. art. 2, § 25. When, in a criminal trial, the prosecution suppresses "evidence favorable to an accused . . . where the evidence is material either to guilt or to punishment," that suppression violates the constitutional guarantees of due process. Brady, 373 U.S. at 87.

¶28 Rule 16(I)(a)(2) codifies Brady's constitutional disclosure requirement. See People v. Dist. Court, 790 P.2d 332, 337 (Colo. 1990) ("[Rule 16(I)(a)(2)] is grounded in the due process requirements identified by the United States Supreme Court in [Brady]."). Specifically, Rule 16(I)(a)(2) requires prosecutors to "disclose to the defense any material or information within his or her possession or control which tends to negate the guilt of the accused as to the offense charged or would tend to reduce the punishment therefor." We have consistently interpreted this disclosure requirement against the backdrop of Brady jurisprudence. See, e.g., In re Attorney C, 47 P.3d 1167, 1170–71 (Colo. 2002) ("Hence, the materiality standard of Brady . . . applies to Rule 16 disclosures in Colorado."). Thus, we evaluate the People's appeal through the lens of Brady.

¶29 A Brady claim requires a defendant to show that (1) the prosecution suppressed evidence (2) that is exculpatory or favorable to the defendant and (3) that is material to the case. People v. Pope, 724 P.2d 1323, 1325 (Colo. 1986).

13

¶30 First, <u>suppression</u> for <u>Brady</u> purposes occurs where prosecutors fail to disclose material and exculpatory evidence to the defense.[8] <u>Smith</u>, 50 F.3d at 824. The U.S. Supreme Court has held that the prosecution's disclosure requirement exists independent of a request for such evidence from the defense. <u>United States v. Agurs</u>, 427 U.S. 97, 110–11 (1976), <u>abrogated on other grounds by</u> <u>United States v. Bagley</u>, 473 U.S. 667, 682 (1985); <u>People v. Sheppard</u>, 701 P.2d 49, 51 n.5 (Colo. 1985). The Court has further clarified that whether the prosecution acts in good or bad faith in failing to disclose evidence at issue is irrelevant to the <u>Brady</u> inquiry. <u>Kyles v. Whitley</u>, 514 U.S. 419, 432 (1995).

¶31 Second, evidence is <u>exculpatory</u> for <u>Brady</u> purposes if it tends to mitigate the likelihood of guilt or the severity of the sentence.[9] <u>Brady</u>, 373 U.S. at 87–88; <u>see also</u> <u>Bagley</u>, 473 U.S. at 676 (explaining that the <u>Brady</u> disclosure requirement applies to evidence useful to a defendant for impeachment purposes).

¶32 And third, evidence is <u>material</u> under the <u>Brady</u> analysis "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." <u>Bagley</u>, 473 U.S. at 682. The

---

[8] "Suppression" is a legal term that encompasses any failure to disclose evidence, whether intentional or not, <u>see</u> <u>People v. Sheppard</u>, 701 P.2d 49, 52 (Colo. 1985), and "irrespective of the good faith or bad faith of the prosecution," <u>Brady</u>, 373 U.S. at 87.

[9] As we stated above, suppressed evidence must be exculpatory or favorable to the defendant. <u>Pope</u>, 724 P.2d at 1325. Because the evidence at issue here is exculpatory in nature, we focus only on that type of evidence.

14

standard under <u>Brady</u> is not whether each piece of evidence at issue is individually material, but whether it is material collectively. <u>Kyles</u>, 514 U.S. at 436.

¶33 Having articulated the three elements of a <u>Brady</u> claim, we now examine them in detail to determine whether the trial court abused its discretion.

## B. Analysis and Application

### 1. Suppression: Failure to Disclose or Make Available

¶34 Rule 16(I) imposes two disclosure requirements on prosecutors. The first is that they "shall make available" enumerated "material and information which is within [their] possession or control." Crim. P. 16(I)(a)(1). The second is that they "shall disclose to the defense any material or information within [their] possession or control which tends to negate" the defendant's guilt or reduce his punishment. Crim. P. 16(I)(a)(2).

¶35 The People argue that the government made the evidence at issue here available to Bueno's attorneys before the trial; specifically, the People point to the time when the defense team gained access to the LCF incident report files. Bueno's team was given access to files at LCF almost a year ahead of Bueno's trial, and these files contained the evidence at issue. Thus, the People argue that had Bueno's attorneys exercised reasonable diligence, they would have found the Deatrich and Smelser Reports, meaning that the People satisfied Rule 16 and did not violate <u>Brady</u>.

¶36 In making this argument, the People assert that the court of appeals erred in concluding that the phrase "shall disclose" in Rule 16(I)(a)(2) must mean "something more than making information 'available' under Crim. P. 16(I)(a)(1)," <u>Bueno</u>, ¶ 16, or,

15

stated differently, that the court erred in holding that Rule 16(I)(a)(2) requires the prosecution to affirmatively disclose material, exculpatory evidence. Rather, the People argue, Rule 16's commands to disclose evidence and to make it available are coextensive. We need not resolve the difference between the meaning of these terms because we conclude on the facts here that the prosecution neither disclosed nor made the evidence at issue available, and thus, the record supports the trial court's finding that the prosecution suppressed the Deatrich and Smelser Reports for <u>Brady</u> purposes.

¶37 As to the issue of disclosure, the trial court's findings support, and the People do not dispute, that the prosecution failed to provide copies of the Deatrich and Smelser Reports to Bueno. Indeed, the trial court found that the prosecution possessed the two reports "near the very beginning of the investigation" and did not give it to Bueno until "some fifteen (15) months after the guilty verdicts." The trial court also found that the prosecution had "made the conscious decision this information was not to be included in discovery" and had "segregated [the evidence] from the balance of the [prosecution's] working file." The record supports these findings. The investigators looking into Heird's murder received a packet with the Deatrich Report shortly after their arrival at LCF, and Watson had received a copy of the report by the time he left the next day. Smelser gave his report to those same investigators within days of Heird's murder. And the prosecution, despite its immediate recognition that these reports were relevant to the investigation, segregated them from the prosecution's working file and did not provide them to Bueno's defense team. Based on these record-supported findings, we conclude that the prosecution failed to disclose this evidence.

16

¶38 We next turn to the People's contention that they made the evidence available for Rule 16's purposes by allowing the defense access to the LCF files. The People urge us to follow several federal circuit decisions holding that where evidence is otherwise available through reasonable diligence by the defendant, that evidence is not suppressed under Brady. See Dennis v. Sec'y, Pa. Dep't of Corr., 777 F.3d 642, 653–55 (3d Cir. 2015), rev'd en banc, 834 F.3d 263 (3d Cir. 2016); United States v. Pelullo, 399 F.3d 197, 212, 213 n.16 (3d Cir. 2005); United States v. Gonzales, 319 F.3d 291, 297 (7th Cir. 2003); United States v. Mulderig, 120 F.3d 534, 541 (5th Cir. 1997); United States v. Wilson, 901 F.2d 378, 381 (4th Cir. 1990). Here, the People contend, the government's permission to let Bueno conduct a search through the LCF incident report files satisfies Brady's disclosure requirements because the evidence was available to Bueno eight months before his trial began, and he should have located the relevant reports through reasonable diligence.

¶39 The Supreme Court has at least twice rejected arguments similar to the People's assertion that the defense must make reasonable efforts to locate Brady materials. In Strickler v. Greene, 527 U.S. 263, 283–85 (1999), the Court rejected the State's contention that the defendant should have been alerted to a witness's undisclosed police interviews by her trial testimony and a letter she had published in a newspaper. The Court concluded that because the prosecution suppressed documentary evidence of the interviews despite its supposed open-file policy, the defense reasonably relied on "not just the presumption that the prosecutor would fully perform" his disclosure duty, "but also the implicit representation that such materials would be included in the open files

17

tendered to defense counsel." Id. at 284. The Court further noted that the State's representation that it had fully disclosed all Brady materials meant the defendant reasonably believed that the State had complied with Brady. Id. at 287.

¶40 The Court affirmed the notion that the defense need not search for a needle in a haystack in Banks v. Dretke, 540 U.S. 668 (2004). There, it rejected the State's argument that the defendant would have discovered evidence to impeach a key witness had he sought to interview the witness or the investigating officers. Id. at 695–96. That argument, the Court reasoned, was inconsistent with its Brady precedent, which "lend[s] no support to the notion that defendants must scavenge for hints of undisclosed Brady material when the prosecution represents that all such material has been disclosed." Id. at 695. "A rule thus declaring 'prosecutor may hide, defendant must seek,'" the Court further reasoned, "is not tenable in a system constitutionally bound to accord defendants due process." Id. at 696.

¶41 Besides, even if we were to apply a reasonable diligence requirement, it would not avail the People here. As reflected in the record, for several reasons, the defense team's reasonable diligence would not have led to its discovery of the reports. First, by the time Bueno's team searched the LCF incident report files, the prosecution had repeatedly affirmed that it had already disclosed all Brady evidence. See Strickler, 527 U.S. at 287 (justifying the defendant's reliance on the State's Brady-compliance with the State's assertion that it had fully disclosed everything known to it). Second, the prosecution asserted that the LCF reports were irrelevant to the case. See Pelullo, 399 F.3d at 213 ("[D]efense counsel's knowledge of, and access to, evidence may be

18

effectively nullified when a prosecutor misleads the defense into believing the evidence will not be favorable to the defendant."). Third, the LCF files that Bueno's defense team reviewed were voluminous, containing 9,600 incident reports.[10] Finally, Bueno's team was not looking for these reports—or even these types of reports—when it searched the LCF files. Rather, it was collecting all incident reports involving the use or possession of shanks in the prison. Yet neither report at issue contained any references to shanks or stabbings. The reports, one of which detailed a threat on inmates' lives and the other a death caused by chest trauma, would therefore not fall within the scope of the Bueno defense team's search. Hence, under these facts, and consistent with the trial court's finding that the prosecution failed to comply with Rule 16, we conclude that the evidence was not made available to the defense.

¶42 Thus, because the trial court correctly concluded that the prosecution neither disclosed this evidence nor made it available to Bueno, we conclude that the prosecution did not satisfy its Rule 16 obligations and that it instead suppressed this evidence for <u>Brady</u> purposes.

## 2. Exculpatory Nature

¶43 The parties do not dispute that this evidence was exculpatory for <u>Brady</u> purposes. The trial court found that Bueno immediately raised the alternate-suspect theory of defense, and the evidence at issue here—a note detailing plans by a white

---

[10] Bueno asserted during oral arguments that an average incident report was a few pages long, meaning that Bueno's defense team was likely examining approximately 30,000 pages of documents.

19

supremacist group to murder other white inmates, when Bueno was charged with killing a white inmate, and a report from an LCF investigator expressing concern that Heird's murder was related to another white inmate's suspicious and temporally proximate death—plainly supports that theory of defense. As such, we conclude that this evidence was indeed exculpatory. The final dispositive issue, then, is whether this information meets the requirement of materiality under Brady.

### 3. Materiality[11]

¶44 The People's arguments as to materiality distill into two related points: (1) that the trial court applied the wrong standard for when evidence is material for Brady purposes; and (2) that, under the correct standard, the evidence here was not material. Specifically, the People note that evidence is material only if there is a "reasonable probability" that the verdict would have been different, but that the trial court concluded only that the results of Bueno's trial "could" have been different. The People

---

[11] As a preliminary matter, we address the People's failure to designate the trial court transcript in the record. Incomplete records make it difficult to complete our appellate review. This is especially the case with Brady's materiality inquiry, which requires that we look de novo at the suppressed evidence and make a judgment about the import of that evidence relative to the other evidence at trial. Where the other evidence at trial is overwhelming, even the suppression of highly relevant evidence may not undermine our confidence in the outcome. Conversely, confidence in a verdict obtained on underwhelming evidence is more easily shaken. Because the People asked us to resolve the issue of materiality on appeal to this court, they bore the burden to designate a record adequate for us to make this comparison, as the then-applicable C.A.R. 10(b) made clear: "If the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence, the appellant shall include in the record a transcript of all evidence relevant to such finding or conclusion." We proceed on the limited record before us, but where adequate comparison is impossible, we must presume that the trial court's materiality ruling is correct. See LePage v. People, 2014 CO 13, ¶ 15, 320 P.3d 348, 351.

also fault the trial court for failing to make express findings on how the evidence would impact Bueno's alternate-suspect theory and the jury's verdict.[12]

¶45    We reject the People's contention that the trial court employed the wrong materiality standard. The standard it employed was that the evidence "could have significantly impacted the outcome of the trial." The standard we employ, as outlined above, is that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." Bagley, 473 U.S. at 682. Although the trial court did not use that exact language, we conclude that the standard it employed is functionally equivalent. Cf. People v. Dist. Court, 808 P.2d 831, 834 (Colo. 1991) (affirming a trial court's materiality finding despite that court's failure to expressly state and apply the materiality standard). Indeed, the phrase "could have significantly impacted the outcome of the trial" casts the same degree of doubt as the phrase "a probability sufficient to undermine confidence in the outcome." The trial court therefore applied an appropriate materiality standard.

¶46    Nor do we agree that the trial court erroneously concluded that this evidence was material. In support of its conclusion, the trial court explained that the jury deliberated for four days and reached a verdict only after receiving special instructions

---

[12] The People also argue that the trial court erred when it did not address the evidence's admissibility in its Brady analysis. But undisclosed evidence need not be admissible to satisfy Brady; it need merely lead to the possible discovery of other evidence. Cf. Wood v. Bartholomew, 516 U.S. 1, 6 (1995) (analyzing whether the undisclosed evidence "might have led [defendant's] counsel to conduct additional discovery that might have led to some additional evidence that could have been utilized").

on how to overcome a deadlock. This fact permits a reasonable inference that the jury debated Bueno's guilt at length. Considering that the jury indicated that it was deadlocked at some point, the suppressed evidence could have impacted its determination of Bueno's guilt. This is especially so given the theory of the case that Bueno's defense presented. Specifically, he asserted an alternate-suspect theory of defense, and the undisclosed evidence pointed to alternate suspects. While the evidence in question did not specifically reference the victim, at the very least, it was relevant to the manner in which the investigation was conducted. Undoubtedly, the defense would have questioned the investigators in this case on the use (or non-use) of the reports during the investigation. The scope of the investigation is highly relevant, as both the Deatrich and Smelser Reports bear directly on the issue of the murderer's identity. The prosecution knew this, as it immediately obtained these reports at the outset of its investigation. The reports' potential value to Bueno, therefore, was significantly greater given their early availability to the prosecution. Importantly, the trial court judge, who was intimately familiar with all aspects of this case and presided over it from the beginning, concluded that this evidence could have impacted the outcome of Bueno's trial, at the very least, by precluding Bueno from "fully develop[ing] [his] theory of defense." That is the very essence of materiality.

¶47 The question of Bueno's guilt was debated at length by the jury, and there is a reasonable probability that failing to disclose or make available this evidence—which was relevant to the central issue in the case—may have affected the verdict. Thus, we perceive no abuse of discretion in the trial court's conclusion.

22

## 4.  Conclusion Regarding the <u>Brady</u> Claim

¶48    In sum, we conclude that the prosecution here suppressed exculpatory and material evidence, and therefore, that the prosecution violated <u>Brady</u>'s disclosure requirements.  We therefore conclude that the trial court did not abuse its discretion in granting Bueno's motion for a new trial, a decision that is supported by the record and appropriate given the nature of the discovery violation.  <u>See</u> <u>Lee</u>, 18 P.3d at 196 ("The imposition of discovery sanctions generally serves the dual purposes of protecting the integrity of the truth-finding process and deterring discovery-related misconduct.").

## V.  Conclusion

¶49    We hold that "entry of judgment" for purposes of Rule 33 includes both a verdict or finding of guilt and the imposition of a sentence.  Thus, because Bueno filed his Rule 33(c) motion before the trial court imposed a sentence, we conclude that he filed the motion before entry of judgment and it was therefore not time-barred.  On the merits, we conclude that the trial court applied the proper standards in ruling on Bueno's <u>Brady</u> claim, and we perceive no clear error in the trial court's findings.  And like the trial court, we conclude on the record before us that the prosecution violated <u>Brady</u>'s disclosure requirements.  Ultimately, we conclude that the trial court did not abuse its discretion in ordering a new trial.  Accordingly, we affirm the judgment of the court of appeals.