1
 2025 CO 32 Shaun Jeff Snow, Petitioner v. The People of the State of Colorado, Respondent No. 23SC775
Supreme Court of Colorado, En Banc
May 27, 2025

 Certiorari to the Colorado Court of Appeals Court of Appeals
Case No. 21CA2074

 Judgment
 Reversed

 Attorneys for Petitioner: Tillman Patrick Clark, LLC Tillman
 Clark Denver, Colorado

 Attorneys for Respondent: Philip J. Weiser, Attorney General
Brock J. Swanson, Senior Assistant Attorney General Denver,
 Colorado

 Justice Samour delivered the Opinion of the Court, in which
 Chief Justice Márquez, Justice Boatright, Justice
 Hood, Justice Gabriel, Justice Hart, and Justice Berkenkotter
 joined.

 OPINION

 SAMOUR, JUSTICE

 ¶1
We granted certiorari in this case primarily to consider
 whether a Crim. P. 35(a) challenge regarding a
 post-sentencing order setting the amount of restitution is
 cognizable as an illegal sentence claim or an illegal manner
 claim. See Crim. P. 35(a) (allowing a defendant in a
 criminal case to file a postconviction claim to correct (1)
 an illegal sentence-i.e., "a sentence that was not
 authorized by law or that was imposed without
 jurisdiction"-or (2) "a sentence imposed in an
 illegal manner"). The answer matters: Although a trial
 court may correct a sentence not authorized by law or imposed
 without jurisdiction at any time, it may correct a sentence
 imposed in an illegal manner only within 126 days after the
 sentence is imposed. See Crim. P. 35(a)-(b). A
 division of the court of appeals ruled that the Crim. P.
 35(a) claim brought by the defendant, Shaun Jeff Snow, was an
 illegal manner claim that was time-barred. We agree with Snow
 that this was error.

 ¶2
 At the sentencing hearing,[1] the district court deferred the issue
 of restitution in its entirety for sixty days.
Because, with one anomalous exception not relevant here,
 restitution is a component of every sentence, and because
 deferring the issue of restitution in its entirety at a
 sentencing hearing is not one of the restitution

 orders authorized by section 18-1.3-603(1), C.R.S. (2024)
("subsection (1)"), Snow is correct that his
 sentence was not authorized by law.

 ¶3
 But that begs the question of the appropriate remedy to
 correct Snow's illegal sentence. We agree with Snow on
 this front as well.

 ¶4
 Today, we stand firmly by our decision in People v.
 Weeks, 2021 CO 75, 498 P.3d 142. Accordingly, we
 conclude that the untimely restitution order entered by the
 district court after sentencing (the "post-sentencing
 restitution order") must be vacated.

 ¶5
 Because the division erred in upholding the post-sentencing
 restitution order, we reverse. We remand with instructions to
 return the case to the district court so that it may enter an
 order reflecting that Snow owes no restitution.

 I.
Facts and Procedural History

 ¶6
The prosecution charged Snow with one count of first degree
 murder, two counts of possession with intent to distribute a
 controlled substance, four counts of possession of a weapon
 by a previous offender, and a special offender
 sentence-enhancing count. Pursuant to a plea agreement, Snow
 pleaded guilty to an added count of second degree murder in
 exchange for the dismissal of all his original charges and a
 stipulated sentencing range of sixteen to twenty-four years
 in prison. The plea agreement did not mention restitution.
Nor was there mention

 of restitution in the minute order summarizing the
 proceedings at the providency hearing.[2]

 ¶7
 At the sentencing hearing, the court honored the parties'
 plea agreement and imposed a prison sentence of twenty years
 in the Department of Corrections. As pertinent here, the
 prosecution did not request restitution or give any
 indication that it intended to seek restitution. Instead, it
 simply asked the court "to reserve restitution at this
 point in time." The court obliged and "reserve[d]
 restitution for [sixty] days."

 ¶8
 Seventy-eight days later, the prosecution filed a motion for
 restitution that included the restitution
 "information" required by section
 18-1.3-603(2)(a)-i.e., the identity of the victim allegedly
 entitled to restitution and the amount of restitution
 requested.[3] Specifically, the prosecution identified
 (1) the Crime Victim Compensation Board as the sole victim
 entitled to restitution and (2) $13,852.60 as the proposed
 amount of restitution. Thereafter-108 days after the
 sentencing hearing, to be precise-the district court entered
 the post-sentencing restitution order granting the
 prosecution's motion. It noted that Snow had neither
 responded nor objected to the prosecution's request for
 restitution.

 ¶9
 Snow did not directly appeal his conviction or sentence. He
 did, however, seek reconsideration of his sentence through a
 Crim. P. 35(b) motion, which did not take issue with the
 post-sentencing restitution order. The district court denied
 that motion.

 ¶10
 More than five years later, Snow filed a pro se motion to
 waive restitution, court costs, and fines. Snow contended
 that (1) he was indigent, (2) it was not clear whether the
 court had reserved restitution at sentencing for sixty or
 ninety-one days, and (3) the court had illegally denied him a
 hearing on the prosecution's request for restitution. He
 asked the court to "stop taking 20[%] of all future
 money, refund all past money that his family & friends
 gave him [and] which was illegal to begin with and also makes
 the 8% . . . interest on restitution illegal."

 ¶11
The district court denied Snow's postconviction motion
 without a hearing. It found that it lacked "jurisdiction
 to waive or change" the restitution ordered, "[n]o
 [timely] objection to the request for restitution [had been]
 made," and the restitution had been "properly
 entered."

 ¶12
 Snow appealed, arguing, for the first time, that his sentence
 was illegal under Weeks, which we announced about
 seven weeks before he filed his notice of appeal. He noted
 that the district court had set the restitution amount 108
 days after sentencing, which was well beyond the deadline in
 section 18-1.3-603(1)(b) ("subsection (1)(b)").
Under that subsection, a trial court may enter a finding of

 restitution liability at sentencing while postponing the
 determination of the amount of restitution for up to
 ninety-one days or, upon a finding of good cause, for any
 longer period set by the court ("ninety-one-day
 deadline" or "subsection (1)(b)
 deadline").[4] Snow asked the court of appeals to correct
 his illegal sentence by replacing the post-sentencing
 restitution order with an order requiring no restitution.

 ¶13
 A division of the court of appeals disagreed with Snow and
 affirmed the post-sentencing restitution order in an
 unpublished, unanimous opinion. People v. Snow, No.
 21CA2074, ¶ 1 (Aug. 24, 2023). Drawing guidance from the
 decision by a different division in People v.
 Tennyson, 2023 COA 2, 528 P.3d 185 ("Tennyson
 I"), it concluded that Snow's Crim. P. 35(a)
 claim was an illegal manner claim, not an illegal sentence
 claim. Snow, ¶ 10. The division cited
 Tennyson I for the proposition that when "a
 defendant collaterally challenges the amount of restitution
 on grounds that the district court did not comply with the
 procedures outlined in [subsection (1)(b)] and
 Weeks, the issue is cognizable as an illegal manner
 claim under Crim. P. 35(a)." Id. (quoting
Tennyson I, ¶ 33, 528 P.3d at 191).

 ¶14
 Although acknowledging that there is no preservation
 requirement for a Crim. P. 35(a) claim, see Fransua v.
 People, 2019 CO 96, ¶ 13, 451 P.3d 1208, 1211, the
 division pointed out that illegal manner claims are
 nevertheless subject to the 126-day deadline in Crim. P.
 35(b).[5] Snow, ¶ 11. And because Snow
 had filed his Crim. P. 35(a) claim more than 126 days after
 the imposition of his sentence, the division concluded that
 the claim was time-barred. Id.

 ¶15
 Snow sought our review, and we granted his petition. We
 agreed to consider two issues: (1) "Whether a
 postconviction challenge to the timeliness of a restitution
 order is cognizable as an illegal sentence claim under Crim.
 P. 35(a)"; and (2) whether the division "erred in
 relying on [Tennyson I], instead of
 [Weeks], in denying Snow's restitution
 claim."[6]

 II.
Analysis

 A.
Standard of Review

 ¶16
 Subject to constitutional limitations, "it is the
 prerogative of the legislature to . . . prescribe
 sentences." Sanoff v. People, 187 P.3d 576, 577
(Colo. 2008). Our General Assembly has long required that,
 with one rare exception not pertinent here, every criminal
 sentence must reflect consideration of
 restitution.[7] Id. Restitution orders in
 criminal prosecutions in this jurisdiction are governed by
 statute and rule. See § 18-1.3-603; Crim. P.
 32(b)(1) ("When imposing sentence, the court shall
 consider restitution as required by section 18-1.3-603(1),
 C.R.S."); Crim. P. 32(b)(3)(I) (indicating that
 "[a] judgment of conviction" must include "an
 order or finding regarding restitution as required by section
 18-1.3-603, C.R.S.").

 ¶17
 Questions of statutory interpretation are questions of law,
 which we review de novo. Weeks, ¶ 24, 498 P.3d
 at 151. In construing a statute, our goal is to give

 effect to the legislature's intent. Id. at
 ¶ 25, 498 P.3d at 151. The first step in this endeavor
 is to give the statute's "words and phrases their
 plain and ordinary meaning." Id. (quoting
McCulley v. People, 2020 CO 40, ¶ 10, 463 P.3d
 254, 257). We "presume that a legislature says in a
 statute what it means and means in a statute what it says
 there." Id. (quoting Conn. Nat'l Bank
 v. Germain, 503 U.S. 249, 253-54 (1992)). Consequently,
 if a statute is unambiguous, we apply it as written without
 resorting to tools of statutory construction. People v.
 Baker, 2019 CO 97M, ¶ 13, 452 P.3d 759, 762.

 ¶18
 The same principles that apply to statutory interpretation
 apply when we construe our rules of criminal procedure, which
 we have plenary authority to promulgate and interpret.
Id. at ¶ 14, 452 P.3d at 762. Just as with
 questions of statutory interpretation, questions of rule
 interpretation are legal in nature and subject to de novo
 review.[8] Hunsaker v. People, 2021 CO 83,
 ¶ 16, 500 P.3d 1110, 1114 (relying on People v.
 Bueno, 2018 CO 4, ¶ 18, 409 P.3d 320, 325).

 ¶19
We also review de novo the legality of a sentence. Veith
 v. People, 2017 CO 19, ¶ 12, 390 P.3d 403, 406.
Thus, the denial of a Crim. P. 35(a) claim asserting that

 a sentence was either not authorized by statute or imposed
 without jurisdiction is a question of law subject to de novo
 review.

 B.
 Colorado's Restitution Statute (Section
 18-1.3-603)

 ¶20
 Subsection (1) provides in pertinent part that every sentence
 must include at least one of four enumerated restitution
 orders: (1) an order pursuant to section 18-1.3-603(1)(a)
("subsection (1)(a)") requiring payment of an
 amount of restitution; (2) an order pursuant to subsection
 (1)(b) obligating the defendant to pay restitution but
 indicating that the amount of restitution will be determined
 within the ninety-one-day deadline; (3) an order pursuant to
 section 18-1.3-603(1)(c) ("subsection (1)(c)"), in
 addition to or in place of an order requiring payment of an
 amount of restitution, directing the defendant to pay
 restitution covering the actual costs of future treatment for
 any victim; or (4) an order pursuant to section
 18-1.3-603(1)(d) ("subsection (1)(d)") stating that
 no payment of restitution is required because no victim
 suffered a pecuniary loss.

 ¶21
 An order that is not authorized by at least one of these four
 subsections fails to satisfy the restitution component of a
 sentence. Weeks, ¶ 3, 498 P.3d at 147-48.
Correspondingly, a sentence that fails to include one or more
 of the four enumerated restitution orders in subsection (1)
 is a sentence not authorized by law (i.e., an illegal
 sentence) that may be corrected at any time. Tennyson v.
 People, 2025 CO 31, ¶ 2, ___P.3d___
("Tennyson II"); Crim.
 P. 35(a).

 C.
The District Court Imposed an Illegal Sentence During the
 Sentencing Hearing

 ¶22
We agree with Snow that, at the sentencing hearing, the
 district court imposed a sentence not authorized by law
 because the mere reservation of the issue of restitution in
 its entirety failed to adhere to subsection (1). See
 Weeks, ¶ 2, 498 P.3d at 147. Stated differently,
 the court's order at sentencing related to restitution
 did not satisfy the restitution component of Snow's
 sentence and judgment of conviction. See Meza v.
 People, 2018 CO 23, ¶¶ 13-14, 415 P.3d 303,
 307-08.

 ¶23
 Nowhere does subsection (1) authorize a trial court to simply
 defer the issue of restitution in its entirety. Because
 restitution is a component of every sentence, and because the
 district court failed to enter at least one of the four
 restitution orders authorized by subsection (1), Snow
 received an illegal sentence. Tennyson II, ¶ 2.

 ¶24
 Of course, an illegal sentence is correctable at any time. As
 we observed in a different context in Whiteaker v.
 People, 2024 CO 25, ¶ 28, 547 P.3d 1122, 1128,
 Colorado jurisprudence allows-and, in fact requires-courts to
 correct an illegal sentence without any time limitation.

 ¶25
 That leaves the question of the proper remedy to correct
 Snow's illegal sentence. We turn our attention to that
 issue next.

 D.
Snow's Sentence Must Be Corrected by Vacatur of the
 Post-Sentencing Restitution Order and Entry of an Order of No
 Restitution

 ¶26
 Snow contends that, because the post-sentencing restitution
 order failed to comply with the subsection (1)(b) deadline,
 he's entitled to have it vacated pursuant to
 Weeks. Although we ultimately agree with Snow on the
 remedy to correct his illegal sentence, we disagree with his
 rationale in arriving at that result.

 ¶27
 It is true, as Snow contends, that the district court entered
 the post-sentencing restitution order 108 days after
 sentencing-i.e., after expiration of the subsection (1)(b)
 deadline. It is also true, as Snow reminds us, that vacatur
 of restitution was the remedy we granted in Weeks
 for the trial court's violation of the subsection (1)(b)
 deadline. ¶ 47, 498 P.3d at 157. But the subsection
 (1)(b) deadline is inapposite here because the district court
 never entered a subsection (1)(b) order. Rather, at
 sentencing, the court merely reserved the issue of
 restitution in its entirety, an order not authorized by
 subsection (1). Thus, this is plainly not a subsection (1)(b)
 case.

 ¶28
 Because Weeks was a subsection (1)(b) case, it is
 not dispositive. While our opinion there touched on the
 impropriety of reserving the issue of restitution in its
 entirety at sentencing, our discussion reflected that the
 trial court had invoked subsection (1)(b), which permits a
 finding of restitution liability at sentencing and
 postponement of the determination of the amount of
 restitution until after

 sentencing. See Weeks, ¶¶ 1-3, 11, 16, 498
 P.3d at 147-50. Specifically, at sentencing, the prosecution
 in Weeks advised that it had already decided it
 would be requesting restitution and that it intended to
 identify the proposed amount of restitution after sentencing.
Id. at ¶ 11, 498 P.3d at 149. Further, the
 trial court had previously granted the prosecution's
 request for an amount of restitution in the codefendant's
 case based on the same pecuniary losses suffered by the
 same victim in the same incident. Id. at ¶
 11 n.6, 498 P.3d at 149 n.6. And, following the sentencing
 hearing, the court confirmed that, at sentencing, it had
 entered an order allowing the prosecution ninety-one days to
 submit the restitution information.[9] See id. at ¶
 16, 498 P.3d at 150.

 ¶29
 By contrast, here, the record of the district court
 proceedings is barren of an explicit or implicit finding of
 restitution liability either before or during the sentencing
 hearing. Rather, the issue of restitution was conspicuously
 absent from the plea agreement and the providency hearing,
 and the colloquy between the court and the prosecution at the
 sentencing hearing left no doubt that everyone

 intended to defer until after sentencing the issue of
 restitution in its entirety. Under these circumstances, there
 is no basis for us to infer that the only issue the district
 court deferred until after the sentencing hearing was the
 determination of the amount of restitution.

 ¶30
We nevertheless agree with Snow that, under Weeks,
 he's entitled to vacatur of the post-sentencing
 restitution order and entry of an order of no restitution.
While Weeks is not on all fours, it is at least on
 twos. The remedy we granted there, as well as the reasons for
 it, provide guidance here.

 ¶31
We chose the remedy of vacatur in Weeks because we
 could conceive of no other appropriate remedy when, on direct
 appeal, a court concludes that the trial court, after
 entering a subsection (1)(b) order finding restitution
 liability at sentencing, fails to comply with the
 ninety-one-day deadline and thus acts without authority in
 determining the amount of restitution. See Weeks,
 ¶ 47, 498 P.3d at 157. Directing the trial court in that
 situation to correct the illegal sentence by reissuing the
 untimely order setting the restitution amount or issuing a
 subsection (1)(a) order to accomplish the same thing would
 have knocked out all the deadline's teeth.[10]

 ¶32
 That rationale applies with equal force here. The prosecution
 maintains that the post-sentencing restitution order
 qualified as a subsection (1)(a) order (i.e., an order
 simultaneously finding restitution liability and determining
 the amount of restitution) that corrected Snow's illegal
 sentence. And, since a subsection (1)(a) order is not subject
 to the subsection (1)(b) deadline, the prosecution asserts
 that the post-sentencing restitution order was timely.
However, were we to approve the post-sentencing restitution
 order as a subsection (1)(a) order that corrected Snow's
 illegal sentence, it would render portions of section
 18-1.3-603 meaningless.

 ¶33
 First, the prosecution's suggested methodology would
 disregard subsection (1)'s requirement that, at
 sentencing, trial courts must enter one or more of the four
 enumerated restitution orders. Allowing trial courts to
 correct their failure to adhere to this requirement by simply
 entering a subsection (1)(a) order at any time would make the
 requirement pointless.

 ¶34
 Second, the analytical framework championed by the
 prosecution would permit untimely restitution orders. We
 realize that, as the prosecution observes, there is no
 deadline in subsection (1)(a). But that's because orders
 under subsection (1)(a) must enter at or before the
 sentencing hearing. See § 18-1.3-603(1)(a)
("Every order of conviction . . . shall include
 one or more of the following: . . . An order of a specific
 amount of restitution . . . ." (emphases added)).
Therefore,

subsection (1)(a) orders entered after the sentencing hearing
 are necessarily untimely.[11]

 ¶35
 The acceptance of such untimely orders would directly
 contravene some of the declarations our General Assembly
 included as part of the restitution amendments enacted in
 2000. Ch. 232, sec. 1, § 16-18.5-101, 2000 Colo. Sess.
 Laws 1030, 1030-31 (Section 16-18.5-101 was relocated to
 section 18-1.3-601 in 2002. See Ch. 318, sec. 2,
§ 18-1.3-601, 2002 Colo. Sess. Laws 1365, 1419). Our
 General Assembly pronounced, in no uncertain terms, that (1)
"[a]n effective criminal justice system requires
 timely restitution to victims of crime and to
 members of the immediate families of such victims"; (2)
 the former procedures for the assessment of restitution had
 "proven to be inadequate and inconsistent from
 case to case"; and (3) the purpose of the amendments was
 to facilitate both "[t]he establishment of programs and
 procedures to provide for . . . full restitution for victims
 of crime in the most expeditious manner," as
 well as "[t]he effective and timely assessment
 . . . of restitution" through "the cooperation and
 collaboration of all criminal justice

 agencies and departments." § 18-1.3-601(1)(e)-(g),
 C.R.S. (2024) (emphases added).

 ¶36
The legislature could not have been clearer: The stakeholders
 in the criminal justice system must follow the procedures
 adopted in 2000 and work together to ensure the effective,
 timely, and most expeditious assessment of restitution. Yet,
 when we decided Weeks, more than two decades after
 the amendments, litigants and trial courts were still
 engaging in the "longstanding practice" that failed
 to adhere to those amendments. ¶ 2, 498 P.3d at 147.
That's precisely what animated our decision in
 Weeks: We sought to buck the stubborn trend.
Id. Despite the prosecution's fervent pleas to
 backtrack now, we see no reason to reverse course.

 ¶37
 Importantly, were we to acquiesce and embrace the
 prosecution's position, it would permit a trial court to
 correct an illegal sentence like the one Snow received by
 simply requiring payment of an amount of restitution many
 years or even decades after the sentencing hearing. We
 decline the invitation to be led down this primrose path. We
 are as unwilling to ignore our legislature's intent today
 as we were when we announced our decision in Weeks.

 ¶38
 Here, as in Weeks, the sole remedy consistent with
 the legislative intent behind subsection (1) is vacatur of
 the untimely restitution order and entry of an order pursuant
 to subsection (1)(d) that there is no restitution owed. Under
 the circumstances of this case, a subsection (1)(d) order,
 unlike an order pursuant to

subsections (1)(a)-(c), honors the legislature's overhaul
 of our restitution system to (1) require the entry of at
 least one of the four enumerated restitution orders at
 sentencing and (2) ensure the effective, timely, and most
 expeditious assessment of restitution.[12] Absent
 ramifications for a trial court's failure to comply with
 section 18-1.3-603, there is no way to effectuate our
 legislature's intent in revamping our restitution
 scheme.[13] Otherwise, section 18-1.3-603's
 requirements might as well not exist.

 ¶39
The prosecution nevertheless protests that a subsection
 (1)(d) order of no restitution is improper because the victim
 in this case actually suffered pecuniary losses. In other
 words, the prosecution posits that a court may enter a
 subsection (1)(d) order of no restitution only when there is
 a factual basis for a finding that no victim
 suffered pecuniary losses. But no such limitation exists in
 subsection (1)(d). Besides, were we to take that view, it
 would lead to an absurd

 result-a trial court would be required to order restitution
 in a case with a factual basis for a victim's pecuniary
 losses, even though it failed to timely determine those
 losses. And the same result would presumably obtain in a case
 in which the prosecution presented the restitution
 information decades after it was due.

 ¶40
 Furthermore, the prosecution's logic would leave
 defendants without a remedy for a trial court's untimely
 entry of a restitution order. Nothing in the statute suggests
 that the legislature intended such a result. Thus, reading
 the statute as a whole, a subsection (1)(d) order of no
 restitution is justified not only when there is no factual
 basis that a victim suffered pecuniary losses but also when
 the court fails to timely determine them. In this case, the
 district court performed its statutory responsibilities in an
 untimely fashion, so a subsection (1)(d) order is justified
 to correct Snow's illegal sentence.[14]

 III.
Conclusion

 ¶41
 For the foregoing reasons, we reverse the division's
 judgment. We remand with instructions to return the case to
 the district court so that it may vacate the

 post-sentencing restitution order and enter an order of no
 restitution pursuant to subsection (1)(d).

---------

[1] We refer to a "sentencing
 hearing" or "sentencing" when describing a
 hearing during which the sentence is imposed and the judgment
 of conviction enters.

[2] The transcript of the providency
 hearing is not part of the appellate record.

[3] Before us, Snow does not take issue
 with the fact that the prosecution's motion was submitted
 outside of the court's sixty-day deadline.

[4] When we refer to restitution
 "liability," we mean a general obligation to pay
 restitution without a determination yet of the amount of
 restitution. And when we refer to the "amount of
 restitution" or the "restitution amount," we
 mean the final amount of restitution.

[5] A trial court may reduce a sentence
 under Crim. P. 35(b) if an appropriate motion is filed within
 126 days after (1) imposition of the sentence, (2) receipt of
 the remittitur following either (a) an affirmance of the
 sentence or judgment of conviction or (b) dismissal of the
 appeal, or (3) entry of an appellate court's order or
 judgment denying review or having the effect of upholding the
 sentence or the judgment of conviction. A trial court may
 also reduce a sentence at any time pursuant to a limited
 remand ordered by an appellate court during the pendency of a
 direct appeal. Crim. P. 35(b). Snow did not appeal his
 judgment of conviction, so the 126-day deadline started
 running upon the imposition of his sentence.

[6] The answer brief advances contentions
 that exceed the scope of the issues we agreed to review. By
 way of example, the prosecution urges, for the first time in
 these proceedings, that defendants lack standing to challenge
 the timeliness of the restitution component of their
 sentences, which would mean that defendants who are subjected
 to a restitution order that is unauthorized by law would be
 precluded from contesting the legality of their sentences.
Even assuming without deciding that the prosecution is
 entitled to raise this standing contention, we reject it as
 devoid of merit. "Any losing person or entity may appeal
 a lower court's decision if she was a party to the action
 in that court. There is no independent requirement that a
 party to a proceeding establish standing to appeal."
Arapahoe Cnty. Dep't of Hum. Servs. v. People in Int.
 of D.Z.B., 2019 CO 4, ¶ 7, 433 P.3d 578, 580
(citations omitted). We decline to address any other
 arguments not properly before us.

[7] The one exception, which has no
 relevance here, is a sentence imposed following a
 "conviction for a state traffic misdemeanor offense
 issued by a municipal or county court in which the
 prosecuting attorney is acting as a special deputy district
 attorney pursuant to an agreement with the district
 attorney's office." § 18-1.3-603(1), C.R.S.
(2024). For the sake of convenience, we omit any mention of
 this anomalous exception when discussing Colorado law on
 restitution in this opinion.

[8] Although Crim. P. 32(b) includes a
 couple of references to restitution, it doesn't add
 anything substantive to section 18-1.3-603. Therefore, this
 opinion focuses on the statute.

[9] Consistent with the trial court
 proceedings, the appeal in Weeks revolved around
 subsection (1)(b). Weeks, ¶¶ 18-20, 498
 P.3d at 150-51. The defendant challenged the judgment entered
 on the post-sentencing determination of the restitution
 amount. People v. Weeks, 2020 COA 44,
 ¶¶ 1-2, 490 P.3d 672, 673. Accordingly, before us,
 the parties briefed issues exclusively related to the
 procedures and deadlines applicable when, at sentencing, a
 trial court enters a subsection (1)(b) order finding
 restitution liability and deferring the determination of the
 restitution amount. Weeks, ¶ 32, 498 P.3d at
 153.

[10] Even before Weeks, we'd
 sanctioned the automatic vacatur or reversal of
 post-sentencing orders determining the restitution amount
 without statutory authority. See Tennyson II, ¶
 59. Weeks simply followed in its predecessors'
 footsteps.

[11] Subsection (1)(b) and (1)(c) orders
 are not in play here. At the time of the post-sentencing
 restitution order, there was no basis to enter a subsection
 (1)(b) order and/or a subsection (1)(c) order-and,
 understandably, the prosecution doesn't rely on either of
 these types of orders as providing an appropriate remedy to
 correct Snow's illegal sentence. In any event, like
 subsection (1)(a) orders, subsection (1)(b) and (1)(c) orders
 must enter before or during the sentencing hearing.
See § 18-1.3-603(1).

[12] We acknowledge that orders pursuant
 to subsection (1)(d), just like orders under its three sister
 subsections, ought to enter at or before the sentencing
 hearing. But courts must have a way to correct an illegal
 sentence like the one imposed on Snow. And a subsection
 (1)(d) order is the only restitution order in the statutory
 list that does that without violating our General
 Assembly's intent in revising our restitution
 paradigm.

[13] We should not be understood as
 suggesting that the district court is the lone culprit in
 this case. As we discussed, the court reserved the issue of
 restitution in its entirety during sentencing at the
 prosecution's request. In fact, as mentioned, the
 prosecution didn't request restitution, or even so much
 as inform the court and Snow that it intended to seek
 restitution, until it submitted the restitution information
 some two-and-a-half months after the sentencing
 hearing.

[14] Given this outcome, we can dispose
 of the second issue on which we granted certiorari (whether
 the division erred in relying on Tennyson I instead
 of Weeks) in short order. As we make clear in
 Tennyson II, ¶¶ 17, 50-53, 57-59, today,
 we do not view the division's decision in Tennyson
 I to be at odds with our decision in
 Weeks.

---------