2012 COA 198

**The PEOPLE of the State of Colorado, Plaintiff–Appellant,**

v.

**Erik Sigurdson ROCKNE, Defendant–Appellee.**

**No. 11CA2495.**

Colorado Court of Appeals, Div. III.

Nov. 8, 2012.

Mark D. Hurlbert, District Attorney, Kristine H. Word, Deputy District Attorney, Breckenridge, Colorado, for Plaintiff–Appellant.

Reilly Pozner, LLP, Michael Kotlarczyk, Denver, Colorado, for Defendant–Appellee.

Opinion by Judge DAILEY.

¶ 1 Pursuant to section 16–12–102(1), C.R.S.2012, the People appeal the district court's order denying an award of supplemental restitution to the victim. We vacate the court's order and remand for further proceedings.

## I. Background

¶ 2 In 2006, defendant was arrested and charged with attempted second degree murder, first degree assault, sexual assault, intimidating a witness or victim, false imprisonment, and false reporting. Defendant's charges were based on allegations that he had gotten into an altercation with his then girlfriend; kicked her repeatedly in the abdomen, causing, among other things, a ruptured bladder; and, rather than taking her to the hospital for treatment, left her in his home while he went to a bar. While he was gone, the victim managed to crawl up three flights of stairs, find her cell phone, and call a taxi to transport her to the hospital, where she was rushed into emergency surgery and hospitalized for over a week.

¶ 3 In 2008, in exchange for the dismissal of the above-mentioned charges, defendant entered a plea of no contest to a count of criminal mischief and was given a deferred judgment and sentence, conditioned, in part, on an obligation to pay restitution to the victim.

¶ 4 The victim claimed that she was entitled to recoup $78,550 in restitution for medical treatment, psychological counseling, and other associated costs she incurred as a result of defendant's acts. Defendant objected, asserting that the victim's claim was "unsupported and [based on] potentially unrelated restitution requests, inaccurate calculations, and outrageously inflated hospital expenses."

¶ 5 In August 2008, defendant and the prosecution stipulated to a restitution award of $8,810 to the victim. Because, however, the court recognized the possibility that the victim could incur further expenses for future medical treatment, it "did not make the order of restitution final" but "left the issue open" and put defendant "on notice that restitution could be increased in the future."

¶ 6 Subsequently, defendant's deferred judgment and sentence were revoked, his judgment of conviction was entered, and he was sentenced, as pertinent here, to six years probation by a second judge. At his December 2009 sentencing hearing, the subject of supplemental restitution for reconstructive surgery for the victim was raised. The prosecutor stated that the victim "has not submitted these bills to me," "I have not seen any of [the medical bills]," and "I have not seen a letter from [the victim] regarding restitution." The parties were asked about the "status of restitution," to which a representative from the probation department and defendant responded that "everything" had been paid. The prosecution, however, interjected, "[s]o the only outstanding issue on restitution [is] ... the possibility of her future medical expenses that had not been [incurred] at that time."

¶ 7 The prosecutor noted that the first judge in the case had "specifically ... reserve[d] ... the possibility of [the victim's] future medical expenses that had not ... occurred at that time." The second judge responded that, "I saw that you reserved

jurisdiction of course. The Court has jurisdiction to address issues of restitution that may result from someone's continued loss." When, however, defense counsel inquired whether there was an issue of restitution "before the court at this moment," the second judge replied, "No. [The court] did not receive anything from [the victim] requesting [restitution] and [the court] would refer her to the District Attorney's Office in order to follow what [the court] consider[s] to be the proper procedure for that."

¶ 8 In September 2010, and again, in April 2011, the People filed requests for more than $35,000 in supplemental restitution for medical and mental health expenses incurred by the victim. Defendant, however, objected to any additional award, and, in a written order, a third judge denied the People's request for supplemental restitution. In its order, the court found that

- a final amount of restitution had been set, "without reservation," when defendant was sentenced to probation in December 2009;

- because there was no "reservation of rights or court order" to that effect, the People's "request to increase restitution[,] first made some nine months after imposition of the sentence [in December 2009]," was "improper" under the restitution statute, section 18–1.3–603, C.R.S.2012; and,

- consequently, any increase in restitution, "under the procedural circumstances" of the case, would violate the restitution statute and defendant's double jeopardy rights.

## II. Analysis

¶ 9 The People contend that a supplemental restitution award here would not violate either the restitution statute or double jeopardy protections. In support of this contention, they assert that (1) double jeopardy is violated only if the restitution statute does not authorize an increase in restitution; (2) the restitution statute authorizes an increase in restitution when a previous restitution order was not final and neither the prosecutor nor the judge knew about additional losses to

the victim; (3) contrary to the court's finding, the December 2009 restitution order was not final; (4) neither the prosecution nor the court knew of the additional expenses; and (5) thus, neither the statute nor defendant's double jeopardy rights would be violated by an increase in defendant's restitution obligation. We conclude that the matter must be remanded for further proceedings.

■ ¶ 10 "Increasing a lawful sentence after it has been imposed and a defendant has begun serving it may, in some circumstances, violate the double jeopardy protection against multiple punishments for the same offense." *People v. Chavez,* 32 P.3d 613, 614 (Colo.App.2001). "However, double jeopardy does not bar the imposition of an increased sentence if the defendant lacked a legitimate expectation in the finality in the sentence." *Romero v. People,* 179 P.3d 984, 989 (Colo. 2007).

■ ¶ 11 Because "[a] defendant can have no legitimate expectation of finality in a sentence that, by statute, is subject to further review and revision," *People v. Castellano,* 209 P.3d 1208, 1209 (Colo.App.2009) (quoting *Chavez,* 32 P.3d at 614), the double jeopardy issue—as well as the statutory authorization issue—turns upon an interpretation and application of the restitution statute.

¶ 12 Before 2000, the law did not permit a court to modify an order of restitution once a legal sentence was imposed and the defendant began serving it. *See People v. Shepard,* 989 P.2d 183, 187 (Colo.App.1999); *see also People v. Wright,* 18 P.3d 816, 818 (Colo. App.2000) (same). However, in 2000, the General Assembly amended the restitution statute to give courts greater latitude in awarding restitution. *See* Ch. 232, sec. 1, § 16–18.5–103, 2000 Colo. Sess. Laws 1032 (relocated in 2002 (Ch. 318, sec. 2, § 18–1.3–603, 2002 Colo. Sess. Laws 1421)).

¶ 13 This version of section 18–1.3–603, which was in effect at the time of defendant's crime, provided, in pertinent part:

(1) Every order of conviction of a felony, misdemeanor, petty, or traffic misdemeanor offense, except any order of conviction for a state traffic misdemeanor offense issued by a municipal or county court in which the prosecuting attorney is acting as a special deputy district attorney pursuant to an agreement with the district attorney's office, shall include consideration of restitution. Each such order shall include one or more of the following:

(a) An order of a specific amount of restitution be paid by the defendant;

(b) An order that the defendant is obligated to pay restitution, but that the specific amount of restitution shall be determined within the ninety days immediately following the order of conviction, unless good cause is shown for extending the time period by which the restitution amount shall be determined;

(c) An order, in addition to or in place of a specific amount of restitution, that the defendant pay restitution covering the actual costs of specific future treatment of any victim of the crime; or

(d) Contain a specific finding that no victim of the crime suffered a pecuniary loss and therefore no order for the payment of restitution is being entered.

(2) The court shall base its order for restitution upon information presented to the court by the prosecuting attorney, who shall compile such information through victim impact statements or other means to determine the amount of restitution and the identities of the victims. Further, the prosecuting attorney shall present this information to the court prior to the order of conviction or within ninety days, if it is not available prior to the order of conviction. The court may extend this date if it finds that there are extenuating circumstances affecting the prosecuting attorney's ability to determine restitution.

(3) Any order for restitution may be:

(a) Increased if additional victims or additional losses not known to the judge or the prosecutor at the time the order of restitution was entered are later discovered and the final amount of restitution due has not been set by the court. . . .

Ch. 318, sec. 2, § 18–1.3–603, 2002 Colo.

Sess. Laws 1421 (2006 statute).[1]

¶ 14 Defendant would have us interpret these provisions to require all restitution requests be made within ninety days of an order of conviction (here, December 2009) unless there is

- "[G]ood cause ... for extending the ... period," (2006 statute, § 18–1.3–603(1)(b));
- "An order, in addition to or in place of a specific amount of restitution, that the defendant pay restitution covering the actual costs of specific future treatment of any victim of the crime," (2006 statute, § 18–1.3–603(1)(c)); or
- "Extenuating circumstances affecting the prosecuting attorney's ability to determine restitution," (2006 statute, § 18–1.3–603(2)). The People, on the other hand, would have us interpret the statute as permitting requests for increased restitution, independent of any ninety day period, under the circumstances identified in section 18–1.3–603(3)(a) (2006 statute).[2]

¶ 15 We agree with the People's interpretation of the statute.

¶ 16 Statutory interpretation is a question of law, which we review de novo. *Hendricks v. People*, 10 P.3d 1231, 1235 (Colo.2000). In interpreting section 18–1.3–603, our task is to ascertain and give effect to the intent of the General Assembly. *Dubois v. People*, 211 P.3d 41, 43 (Colo.2009). To discern the legislative intent, we look first to the language of the statute itself, *People v. Summers*, 208 P.3d 251, 253–54 (Colo.2009), and do not presume that the legislature used language idly. *People v. J.J.H.*, 17 P.3d 159, 162 (Colo.2001). In construing statutory language, we read the statute as a whole, with the goal of giving

"consistent, harmonious, and sensible effect to all its parts." *Summers*, 208 P.3d at 254 (quoting *People v. Dist. Court*, 713 P.2d 918, 921 (Colo.1986)). "We presume that the General Assembly intends a just and reasonable result that favors the public interest over any private interest, and we will not construe a statute either to defeat the legislative intent or to lead to an absurd or illogical result." *People v. Reed*, 932 P.2d 842, 843 (Colo.App.1996).

¶ 17 "In determining the scope and intent of a statute, the best guide is often the legislative declaration of policy." *People v. McKinney*, 99 P.3d 1038, 1043 (Colo.2004). Here, the General Assembly has declared that:

- "Crime victims endure undue suffering and hardship resulting from physical injury, emotional and psychological injury, or loss of property," section 18–1.3–601(1)(a), C.R.S.2012;
- "Persons found guilty of causing such suffering and hardship should be under a moral and legal obligation to make *full restitution* to those harmed by their misconduct," section 18–1.3–601(1)(b), C.R.S.2012 (emphasis added);
- "Former procedures for restitution assessment, collection, and distribution have proven to be inadequate," section 18–1.3–601(1)(f), C.R.S.2012; and,
- "The purposes of [the restitution statute] are to facilitate ... [t]he establishment of programs and procedures to provide for and collect *full restitution* for victims of crime in the most expeditious manner." section 18–1.3–601(1)(g)(I), C.R.S.2012 (emphasis added).

1. The current version of section 18–1.3–603 is identical to the version in effect in 2006, except the period has been changed from ninety to ninety-one days. *See* § 18–1.3–603(1) and (2), C.R.S.2012.

2. In their opening brief, the People also contend that good cause existed under section 18–1.3–603(1)(b) (2006 statute), for deferring the final calculation of restitution beyond the ninety-day deadline because of the "horrendous nature of the assault, and the serious nature of the victim's ongoing injuries." However, the People did not

raise this argument before the district court, and even now, only cursorily assert that good cause has been established. Under the circumstances, we decline to address the People's "good cause" contention. *See People v. Salazar*, 964 P.2d 502, 507 (Colo.1998) ("It is axiomatic that issues not raised in or decided by a lower court will not be addressed for the first time on appeal."); *People v. Wallin*, 167 P.3d 183, 187 (Colo.App.2007) (declining to address arguments presented in a perfunctory or conclusory manner).

■ ¶ 18 Consistent with these purposes, we interpret the restitution statute as applying its ninety day period of limitation only to efforts to procure an *initial* order of restitution.[3] That period does not apply to efforts to "increase" a previously entered "order for restitution."

We reach this conclusion for the following reasons:

(1) The ninety-day period is referenced only in section 18–1.3–603(1) and (2), which address the subject of initial "order[s] for restitution";

(2) Section 18–1.3–603(3), which addresses increases in "order[s] for restitution," does not contain a reference to a ninety-day period, nor is it linked, in any way, to the ninety-day period prescribed in subsections (1) and (2) of section 18–1.3–603; and,

(3) Contrary to defendant's argument, section 18–1.3–603(3) is not open-ended in import: an increase in a previously imposed restitution order can only be sought when "the final amount of restitution due has not been set by the court" and the "additional victims or additional losses [were] not known to the judge or the prosecutor at the time the order of restitution was entered."

¶ 19 For these reasons, we conclude that the prosecution's request for supplemental restitution was not barred or otherwise controlled by the ninety-day period prescribed in section 18–1.3–603(1) and (2) but was subject to the conditions set forth in section 18–1.3–603(3).[4]

■ ¶ 20 Thus, the questions under subsection 3(a) are whether (1) "the final amount of restitution due has not been set by the court" and (2) any "additional losses ... [were] known to the judge or the prosecutor

at the time the order of restitution was entered."

¶ 21 Here, the district court determined that the "final amount of restitution" had been ordered in December 2009—a circumstance which, if true, would bar the People from obtaining a supplemental restitution order under section 18–1.3–603(3). The district court based its determination on the following factors: (a) the sentence, entered in December 2009, included an order for restitution in the amount of $8, 810; (b) the prosecutor had not requested to leave the issue of restitution open; and (c) the court had not entered an order reserving a determination of restitution to a future date or restitution hearing.

¶ 22 In support of the court's ruling, defendant points to the December 2009 minute order, which states simply that "all fines and restitution have been paid." In defendant's view, the minute order's failure to note the existence of any outstanding restitution issues is determinative of the finality of amount of restitution recognized by the court at that time. We are not persuaded.

■ ¶ 23 In determining the effect of a minute order, we consider the entire record, *People v. Smith*, 33 Cal.3d 596, 189 Cal.Rptr. 862, 659 P.2d 1152, 1153 (1983), harmonizing, if possible, the minute order with any oral pronouncement of the court, *In re Bryon B.*, 119 Cal.App.4th 1013, 14 Cal.Rptr.3d 805, 809 (2004), but resolving any conflict in favor of the court's oral pronouncement. *See People v. Farell*, 28 Cal.4th 381, 121 Cal.Rptr.2d 603, 48 P.3d 1155, 1156 n. 2 (2002) ("The record of the oral pronouncement of the court controls over the clerk's minute order."); *see also, e.g., United States v. Cephus*, 684 F.3d 703, 709 (7th Cir.2012) ("What the judge says in sentencing a defendant takes precedence over the written judgment."); *United States*

---

**3.** An initial order of restitution under section 18–1.3–603(1) and (2) would deny restitution; set forth a specific amount of restitution; or recognize a defendant's responsibility for paying, in lieu of or in addition to a specific amount of money, "the actual costs of specific future treatment of any victim.".

**4.** In reaching this conclusion, we necessarily reject, as misplaced, defendant's reliance on *People*

*v. Turecek*, 2012 COA 59, 280 P.3d 73. In *Turecek*, a division of this court addressed the timeliness of obtaining the initial restitution order, and not, as here, of obtaining an increase in a previously entered order of restitution. *Id.,* at ¶ 18, 280 P.3d at 76. Consequently, the *Turecek* division had no occasion to consider, much less address, the effect of section 18–1.3–603(3)(a), C.R.S.2012.

*v. Villano,* 816 F.2d 1448, 1450 (10th Cir. 1987) ("It is a firmly established and settled principle of federal criminal law that an orally pronounced sentence controls over a judgment and commitment order when the two conflict. This rule is recognized in virtually every circuit."); *People v. Young,* 894 P.2d 19, 20 (Colo.App.1994) (directing court to correct mittimus consistent with its earlier oral ruling).

¶ 24 Consequently, we interpret, or give effect to, the minute order in light of the court's oral pronouncements at the December 2009 hearing. The interpretation of a written transcript is a question of law subject to de novo review on appeal. *See DiFrancesco v. Particle Interconnect Corp.,* 39 P.3d 1243, 1247 (Colo.App.2001); *see also Mesa Cnty. Valley Sch. Dist. No. 51 v. Kelsey,* 8 P.3d 1200, 1204 (Colo.2000).

¶ 25 After reviewing the transcript, we conclude that the third judge erred in finding that the court had entered a "final amount of restitution" in December 2009.

¶ 26 Ordinarily, we consider something "final" when it has reached an end-point, "precluding further controversy," *see* Merriam–Webster Online Dictionary, *available at* http://www.merriam-webster.com/dictionary (last visited Oct. 4, 2012), and "leav[ing] nothing further for the court ... to do." *See Luster v. Brinkman,* 250 P.3d 664, 666 (Colo. App.2010); *see also See Fox v. City of West Palm Beach,* 383 F.2d 189, 192 (5th Cir.1967) ("'finality' exists when nothing further remains to be done; it does not exist when something is tentative or incomplete."). In *MDC Holdings, Inc. v. Town of Parker,* 223 P.3d 710 (Colo.2010), the supreme court defined "final" as " 'not to be altered or undone' " and noted that "[a] final decision is conclusive of the issue presented." *Id.* at 720–21 (quoting *Webster's Third New International Dictionary* 851 (1961)).

Here, during the December 2009 hearing, the second judge (1) made it clear that he "want[ed] to find out if the restitution that ... [the first judge] ordered ha[d] been paid"; (2) acknowledged that an issue regarding the victim's medical expenses had not been resolved; and, (3) "refer[red] [the victim] to the District Attorney's Office in order to follow ... the proper procedure for" requesting a supplemental restitution award. At no time did the prosecution or the court intimate that the final amount of restitution had been set. To the contrary, the court, if anything, inferred that the restitution amount was not "final" by acknowledging that the victim's cost for her reconstructive surgery was not before the court at this time and by referring her to the prosecution's office to pursue any such claims.

¶ 27 Because, properly interpreted, the court's minute order referenced only the payment of the restitution previously ordered by the first judge, without foreclosing the possibility of further restitution, it did not constitute a determination of a "final amount of restitution." *See Nat'l Distribution Agency v. Nationwide Mut. Ins. Co.,* 117 F.3d 432, 434 (9th Cir.1997) (court's ruling was not final where further action was contemplated).

¶ 28 However, to pursue a claim of supplemental restitution under section 18–1.3–603(3)(a), the People *also* had to establish that the victim's "additional losses" were not "known" to them or the court "at the time" of the prior order.[5] Because the third judge made no determination with respect to this circumstance, a remand for such a determination is necessary.

¶ 29 To the extent that the court concludes that neither it nor the prosecution knew of the victim's losses as of the December 2009 hearing, the court should entertain the People's supplemental requests for restitution and determine them on the merits; to the extent that the court determines that the

---

5. By using only the term "known," the General Assembly evidenced its intent to hold the court and the prosecution to a standard of actual knowledge, and not to a standard of constructive knowledge. *See generally People v. J.J.H.,* 17 P.3d 159, 162 (Colo.2001)(courts do not presume that the legislature used language idly); cf. *People v. J.J.H.,* 17 P.3d 159, 162 (Colo.2001); *Lom-* *bard v. Colorado Outdoor Educ. Center, Inc.,* 187 P.3d 565, 570–71 (Colo.2008) (stating that " 'actually knew' and 'should have known' are distinctive and separate types of knowledge" and because the statute specifically and intentionally included both terms, "the phrase 'knew or should have known' is satisfied by actual or constructive knowledge.' ").

victim's losses were known to either it or the prosecution, the supplemental requests for restitution should be denied.

¶ 30 The order is vacated, and the case is remanded to the district court to conduct further proceedings consistent with the views expressed in this opinion.

Judge ROY and Judge RICHMAN concur.