2021 CO 75 The People of the State of Colorado, Petitioner v. Benjamin Weeks, Respondent No. 20SC340
Supreme Court of Colorado, En Banc
November 8, 2021

 Certiorari to the Colorado Court of Appeals Court of Appeals
Case No. 19CA255

 Attorneys for Petitioner:

 Philip
 J. Weiser, Attorney General

 Majid
 Yazdi, Senior Assistant Attorney General

 Denver, Colorado

 Attorney for Respondent:

 Robert
 P. Borquez

 Denver, Colorado

 JUSTICE SAMOUR delivered the Opinion of the Court. JUSTICE
 BERKENKOTTER does not participate.

 OPINION

 SAMOUR
 JUSTICE

 ¶1
 Old habits die hard. That certainly seems to be the case when
 it comes to the manner in which restitution motions are
 generally submitted and resolved. Over time, the practice
 that has evolved goes something like this:

On the day of the sentencing hearing, the prosecution informs
 the court that it has not yet filed a motion for restitution
 and that it would like to reserve the issue for ninety-one
 days. Without objection from the defense, the court grants
 the request and reserves restitution for ninety-one days. The
 court then provides that, if the prosecution files a timely
 motion for restitution, the defense may file an objection and
 ask for an evidentiary hearing. After the sentencing hearing,
 the mittimus simply reflects that restitution has been
 reserved for ninety-one days.

 ¶2
 This longstanding practice was followed here. The problem is
 that it doesn't comport with the current restitution
 statute, section 18-1.3-603, C.R.S. (2021). In fairness to
 our colleagues litigating and presiding over criminal cases,
 section 18-1.3-603 is not a paragon of clarity. It comes as
 no surprise, then, that divisions of the court of appeals
 have interpreted the statute differently.[1] Today we strive
 to provide guidance in this area of the law.

 ¶3
 Save for a very narrow exception not applicable here, section
 18-1.3-603(1) requires that all judgments of
 conviction contain an order regarding
 restitution.[2]Section 18-1.3-603(1) sets forth four
 options-and only four options-related to the types of
 restitution orders trial courts may enter: (a) an order
 requiring a specific amount of restitution; (b) an order
 requiring restitution but indicating that the specific amount
 will be determined within either ninety-one days of the
 judgment of conviction or, upon a showing of good cause, an
 extension of that time period; (c) an order, in addition to
 or in lieu of a specific amount of restitution, requiring
 payment of the actual costs of a victim's specific future
 treatment; and (d) an order finding that there is no
 restitution because no victim suffered a pecuniary loss.
Every judgment of conviction must include one or more of
 these four types of restitution orders. § 18-1.3-603(1).

 ¶4
 Under subsection (1)(b), the court enters a preliminary order
 requiring the defendant to pay restitution but notes that the
 specific amount will be determined later. §
 18-1.3-603(1)(b). Subsection (1)(b) contains a deadline: The
 amount of

 restitution must be determined within ninety-one days of the
 judgment of conviction unless good cause exists for extending
 that time period.

 ¶5
We now conclude that the deadline in subsection (1)(b) refers
 to the court's determination of the restitution amount
 the defendant must pay, not to the prosecution's
 determination of the proposed amount of restitution. We
 further conclude that this deadline may be extended only if,
 before the deadline expires, the court expressly finds good
 cause for doing so.

 ¶6
The prosecution is subject to a statutory deadline as well.
Under subsection (2), it must file the
 "information" in support of a motion for
 restitution-i.e., "the amount" of the proposed
 restitution-before the judgment of conviction or, if that
 information isn't yet available, no later than ninety-one
 days after the judgment of conviction. §
 18-1.3-603(2).[3] We now conclude that the court may extend
 this deadline only if, before the deadline expires, it
 expressly finds that there are extenuating circumstances
 affecting the prosecution's ability to determine the
 proposed amount of restitution.

 ¶7
 It follows that neither a request for more time to determine
 the proposed amount of restitution nor an order granting such
 a request justifies extending the prosecution's deadline
 in subsection (2) or the court's deadline in subsection
 (1)(b). Rather, each deadline requires an express finding-one
 relating to extenuating circumstances affecting the
 prosecution's ability to determine the proposed amount of
 restitution and the other relating to good cause for
 extending the court's deadline to determine the amount of
 restitution the defendant must pay.[4] It also follows that neither
 a belated request for more time to determine the proposed
 amount of restitution nor an order granting such a request
 may act as a defibrillator to resuscitate an expired
 deadline.

 ¶8
 Ideally, a request for an extension of the prosecution's
 deadline should be made and resolved before or during the
 sentencing hearing.[5] And, if the court needs to extend its own
 deadline (including as a result of extending the

 prosecution's deadline or because it anticipates
 briefing, a hearing, or both to resolve a motion for
 restitution), it should ideally make a finding of good cause
 no later than the sentencing hearing. Following the
 sentencing hearing, the prosecution may still request and
 receive an extension of its deadline and the court may still
 extend its own deadline, but the court must be mindful that
 it has to enter one or more of the four types of restitution
 orders listed in subsection (1) at the sentencing hearing.
Nowhere does section 18-1.3-603 permit the prosecution to
 request or the court to order that the issue of restitution
 (not just the amount of restitution) remain open for any
 period of time after the judgment of conviction enters. Thus,
 at a sentencing hearing, the trial court judge should be
 prepared to put in place a plan that enforces the
 prosecution's deadline in subsection (2) and adheres to
 the court's deadline in subsection (1)(b).

 ¶9
 Lastly, when the court enters a preliminary restitution order
 pursuant to subsection (1)(b) at a sentencing hearing, the
 mittimus should reflect that restitution has been ordered but
 that the amount will be determined later (either within
 ninety-one days or within whatever expanded timeframe the
 court has established based on a finding of good cause).
Then, when the court subsequently determines the amount of
 restitution (assuming it does so in a timely fashion), the
 mittimus should be updated accordingly. Of course, if the
 prosecution fails to timely submit the proposed amount of
 restitution or if the court ultimately orders

 no restitution (including after considering the merits of the
 restitution motion), the mittimus should be updated to
 reflect that no restitution is required.

 ¶10
The court of appeals in this case read section 18-1.3-603 in
 general harmony with our interpretation. Accordingly, we
 affirm its judgment and remand for further proceedings
 consistent with this opinion. On remand, the division should
 return the case to the trial court with instructions to amend
 the mittimus to reflect that no restitution is required.

 I.
Facts and Procedural History

 ¶11
Benjamin Weeks robbed a convenience store with a deadly
 weapon. A jury of his peers found him guilty of two counts of
 aggravated robbery and two counts of felony menacing. At his
 sentencing hearing, which was held approximately a month
 later, the prosecutor asked that the issue of restitution
 "remain open." Notably, the prosecutor informed the
 court that he'd determined he would be seeking
 restitution but hadn't filed a motion yet. He promised to
 follow up with a written motion within ninety-one
 days.[6] Defense counsel indicated that he would
 address restitution "when there's a motion
 filed." The court granted the

 prosecutor's request, reserved the issue of restitution
 for ninety-one days, and set a briefing schedule:

I will leave restitution open for ninety-one days. If a
 motion is filed, any response should be filed within
 twenty-eight days and any reply within seven. If anyone wants
 a hearing, the request needs to be made in the pleadings. If
 no request is made, I'll rule on the pleadings.

 ¶12
 Nine days later, the prosecutor filed a motion requesting
 that the court enter an "interim amount" of
 restitution of $524.19-the amount stolen during the robbery
 ($506.54) plus prejudgment interest ($17.65). The prosecutor
 informed the court that he was still investigating whether
 there were grounds to seek additional restitution.

 ¶13
 Twenty-three days later, Weeks filed a response in which he
 argued that the convenience store's losses were limited
 to the $506.54 taken during the robbery and that restitution
 should not remain an open issue indefinitely. Neither party
 requested a hearing, and the court did not immediately act on
 the matter.

 ¶14
 A little over eight months after the sentencing hearing,
 Weeks filed a motion seeking a hearing on the issue of
 restitution. The court granted the request and held a hearing
 two months later. At that hearing, the prosecutor informed
 the court that he was seeking restitution in the amount of
 $524.19. Weeks countered that the court no longer had
 authority to require him to pay restitution because the
 ninety-one-day deadline in subsection (1)(b) had expired. The
 court took the matter under advisement.

 ¶15
 Nearly a year after the sentencing hearing, the court issued
 an order granting the prosecutor's motion for $524.19 in
 restitution. In a separate order, the court rejected
 Weeks's contention that it had lost authority to require
 him to pay restitution. It's this order that serves as
 the centerpiece of the proceedings before us.

 ¶16
The trial court sensed "some tension" between the
 deadline in subsection (2), which it understood as requiring
 the prosecution to submit a restitution motion no later than
 ninety-one days after the judgment of conviction, and the
 deadline in subsection (1)(b), which it understood as
 requiring a resolution of any restitution motion within
 ninety-one days of the judgment of conviction. Having both
 deadlines expire on the same day, reasoned the court, would
 "deprive a defendant of any opportunity to respond"
 to a motion, "deprive both parties of any opportunity to
 request a hearing," and "deprive the court of any
 ability to consider" the merits of a motion "beyond
 the moments" between its filing "and the end of the
 day." The court explained that, consistent with
 subsection (2), it had given the prosecution ninety-one days
 to file a motion for restitution. But, added the court, it
 had also given Weeks time to file a response, the prosecution
 time to file a reply, and both parties time to request a
 hearing. Thus, all in all, the court figured it had allowed
 itself "more than ninety-one days" to determine
 restitution.

 ¶17
 Notably, the court recognized that subsection (1)(b) permits
 an extension of the court's ninety-one-day deadline upon
 a finding of good cause. Although the court acknowledged it
 had made no finding of good cause prior to the expiration of
 this deadline, it found that the "briefing and hearing
 procedure created at the time of sentencing" had
 "implicitly established good cause for restitution to be
 determined beyond the ninety-one-day period."

 ¶18
 Weeks appealed, and a split division of the court of appeals
 vacated the trial court's restitution order. The division
 disagreed with the People's suggestion that the
 ninety-one-day deadline for determining restitution in
 subsection (1)(b) refers to their obligation to determine the
 proposed amount of restitution. People v. Weeks,
 2020 COA 44, ¶¶ 12-13, 490 P.3d 672, 675. Instead,
 concluded the division, that deadline "refers to the
 district court's obligation to order a specific amount of
 restitution within ninety-one days, unless good cause exists
 to extend [it]." Id. at ¶ 13, 490 P.3d at
 675.

 ¶19
 The division observed that there are two deadlines governing
 two "distinct obligations" in section 18-1.3-603:
 one, under subsection (2), relating to the prosecution's
 obligation to submit the proposed amount of restitution, and
 the other, under subsection (1)(b), relating to the
 court's obligation to determine the amount of
 restitution. Id. at ¶¶ 14-15, 490 P.3d at
 675 (relying on People v. Harman, 97 P.3d 290, 294
(Colo.App. 2004)). And, correspondingly, the division viewed

the statute as containing two different standards to extend
 those deadlines: extenuating circumstances for the
 prosecution's deadline and good cause for the court's
 deadline. Id. at ¶ 15, 490 P.3d at 675. The
 division continued that, "if the prosecution needs the
 full ninety-one days (or more) to complete its request for
 restitution under section 18-1.3-603(2), that in itself could
 constitute 'good cause' for the trial court to extend
 its restitution ruling beyond the ninety-one-day deadline
 under section 18-1.3-603(1)(b)." Id. at ¶
 20, 490 P.3d at 676.

 ¶20
 Because the trial court neither determined the restitution
 amount within ninety-one days of the judgment of conviction
 nor found good cause to extend that deadline, the division
 held that the trial court lacked authority to enter the
 restitution order. Id. at ¶¶ 23-28, 490
 P.3d at 676-77. The division further noted that the record
 did not show "what good cause, if any, existed for [the]
 inordinate delay" between the sentencing hearing and the
 restitution order. Id. at ¶ 27, 490 P.3d at
 677. And the division was unwilling to "infer the
 existence of good cause in the absence of such an
 explanation." Id.

 ¶21
Judge Berger dissented. In his view, "when a court
 extends the time for the prosecutor to seek restitution"
 under subsection (2), "that extension implicitly
 constitutes good cause for the trial court to decide the
 motion outside of the

 prescribed ninety-one-day period" under subsection
 (1)(b).[7] Id. at ¶ 36, 490 P.3d at 678
(Berger, J., dissenting). According to Judge Berger, granting
 the prosecution "an additional ninety-one days after the
 date of sentencing to request restitution" should, at a
 minimum, constitute "good cause for the court to decide
 the matter after the ninety-one-day" period
 ends because the trial court "[o]bviously . . . needs
 time to decide the motion after it is filed and any briefing
 is completed." Id. at ¶ 38, 490 P.3d at
 678-79. Moreover, maintained Judge Berger, the majority's
 interpretation leads to an absurd result because "the
 legislature could not have intended that no restitution would
 enter if no decision issued in ninety-one days."
Id. at ¶ 42, 490 P.3d at 679. Such a result,
 opined Judge Berger, "prevents a crime victim from
 receiving restitution that is not only timely requested by
 the prosecutor, but also conceded by the defendant."
Id.

 ¶22
The prosecution asked our court to review the division's
 decision. We agreed to do so.[8]

 II.
Analysis

 ¶23
We begin by setting forth the standard of review and familiar
 principles of statutory interpretation. Guided by this
 authority, we construe section 18-1.3-603 and then apply it
 in this case. Because we generally agree with the
 division's application of the statute, we affirm.

 A.
Standard of Review and Familiar Principles of Statutory
 Interpretation

 ¶24
 Questions of statutory interpretation are questions of law.
People v. Sprinkle, 2021 CO 60, ¶ 12, 489 P.3d
 1242, 1245. We review such questions de novo. Id.

 ¶25
 In construing a statute, we aim to effectuate the General
 Assembly's intent. People v. Ross, 2021 CO 9,
 ¶ 23, 479 P.3d 910, 915. Our first step in this endeavor
 is to inspect "the language of the statute, giving its
 words and phrases their plain and ordinary meaning."
McCulley v. People, 2020 CO 40, ¶ 10, 463 P.3d
 254, 257. This is the cardinal rule of statutory
 interpretation, Cowen v. People, 2018 CO 96, ¶
 12, 431 P.3d 215, 218, and for good reason: "[C]ourts
 must presume that a legislature says in a statute what it
 means and means in a statute what it says there."
Conn. Nat'l Bank v. Germain, 503 U.S. 249,
 253-54 (1992).

 ¶26
We must take care to read statutory words and phrases in
 context and in accordance with the rules of grammar and
 common usage. McCulley, ¶ 10, 463 P.3d at 257.
We must take equal care to construe a statute "as a
 whole," with an eye toward giving consistent,
 harmonious, and sensible effect to all its parts.
Whitaker v. People, 48 P.3d 555, 558 (Colo. 2002);
see also Pineda-Liberato v. People, 2017 CO 95,
 ¶ 21-23, 403 P.3d 160, 164 (observing, in the context of
 restitution, that the statutory scheme must be construed as a
 whole, giving consistent, harmonious, and sensible effect to
 all its parts). At the same time, we must "avoid
 constructions that would render any words or phrases
 superfluous or lead to illogical or absurd results."
McCoy v. People, 2019 CO 44, ¶ 38, 442 P.3d
 379, 389.

 ¶27
 When the language of a statute is clear and unambiguous, we
 give effect to its plain and ordinary meaning "and look
 no further." Cowen, ¶ 12, 431 P.3d at 218.

"In such a situation, the 'first canon is also the
 last' and the 'judicial inquiry is
 complete.'" Id. (quoting Germain,
 503 U.S. at 254). If, however, the statutory language is
 susceptible of more than one reasonable interpretation and is
 thus ambiguous, we may resort to extrinsic aids of
 construction to address the ambiguity and decide which
 reasonable interpretation to accept based on the
 legislature's intent. Id.

 B.
We Generally
Agree With
the Division's
 Interpretation of Section
 18-1.3-603

 ¶28
 The division's interpretation of section 18-1.3-603 is
 generally in lockstep with the longstanding tenets of
 statutory interpretation we just recited. We therefore agree
 with the division's decision to vacate the trial
 court's restitution order.

 ¶29
Section 18-1.3-603 governs restitution. It provides in
 pertinent part:

(1) Every order of conviction of a felony, misdemeanor,
 petty, or traffic misdemeanor offense, except any order of
 conviction for a state traffic misdemeanor offense issued by
 a municipal or county court in which the prosecuting attorney
 is acting as a special deputy district attorney pursuant to
 an agreement with the district attorney's office, shall
 include consideration of restitution. Each such order shall
 include one or more of the following:

(a) An order of a specific amount of restitution be paid by
 the defendant;

(b) An order that the defendant is obligated to pay
 restitution, but that the specific amount of restitution
 shall be determined within the ninety-one days immediately
 following the order of conviction,

 unless good cause is shown for extending the time period by
 which the restitution amount shall be determined;

(c) An order, in addition to or in place of a specific amount
 of restitution, that the defendant pay restitution covering
 the actual costs of specific future treatment of any victim
 of the crime; or

(d) Contain a specific finding that no victim of the crime
 suffered a pecuniary loss and therefore no order for the
 payment of restitution is being entered.

(2) The court shall base its order for restitution upon
 information presented to the court by the prosecuting
 attorney, who shall compile such information through victim
 impact statements or other means to determine the amount of
 restitution and the identities of the victims. Further, the
 prosecuting attorney shall present this information to the
 court prior to the order of conviction or within ninety-one
 days, if it is not available prior to the order of
 conviction. The court may extend this date if it finds that
 there are extenuating circumstances affecting the prosecuting
 attorney's ability to determine restitution.

 ¶30
 At the outset, we note that the parties assume that
 subsection (2) controls the timeframe within which the
 prosecution must make a motion for restitution. But
 subsection (2) actually addresses the timeframe within which
 the prosecution must submit the "information" in
 support of a motion for restitution-i.e., the amount of the
 proposed restitution. § 18-1.3-603(2). More importantly,
 contrary to the parties' understanding of subsection (2),
 section 18-1.3-603 clearly envisions that any motion for
 restitution must be made before or during the sentencing
 hearing, even if the information supporting the motion
 isn't yet available and the prosecution needs additional
 time to provide it. Nowhere does the statute permit the
 prosecution to ask that the issue of restitution (not just
 the amount of

 restitution) "remain open" for any period of time
 after the judgment of conviction enters. Nor does any part of
 subsection (1) authorize the court to address the issue of
 restitution in a judgment of conviction by entering an order
 deferring that issue in its entirety. Subsection (1)(b)
 allows the court to shelve the determination of the
 amount of restitution after entering a preliminary
 order requiring restitution. And the court can only enter
 such an order if the prosecution has made a motion for
 restitution.[9]

 ¶31
 Thus, what the deadline in subsection (2) controls is the
 timeframe within which the prosecution must submit the
 proposed amount of restitution. § 18-1.3-603(2).
Pursuant to subsection (2), the prosecution must file that
 information before the judgment of conviction or, if it
 isn't yet available, within ninety-one days of the
 judgment of conviction. The court may extend that

 deadline only if it finds that there are extenuating
 circumstances affecting the prosecution's ability to
 determine the proposed amount of restitution.

 ¶32
 With that understanding in mind, we turn to the parties'
 dispute, which revolves around the deadline in subsection
 (1)(b). The People contend that this deadline, too, applies
 to them. But that can't be. As the division cogently
 explained, adopting such an interpretation would render the
 language in subsection (1)(b) "superfluous of the
 language" in subsection (2), Weeks, ¶ 14,
 490 P.3d at 675, and we must avoid interpretations that
 render any provision in a statute superfluous, see
 McCoy, ¶ 38, 442 P.3d at 389. Differently put, if
 the legislature set forth the prosecution's deadline in
 subsection (2)-and the parties agree that it did-why would it
 have addressed the prosecution's deadline again in
 subsection (1)(b)? [10]

 ¶33
The legislature could not have intended to subject the
 prosecution to two conflicting standards. Construing both
 subsections (1)(b) and (2) as imposing deadlines on the
 prosecution would mean that the prosecution would have to
 show "good cause" to obtain an extension of the
 deadline governing the

 determination of the proposed restitution amount but
 "extenuating circumstances" to obtain an extension
 of the deadline governing the submission of the information
 in support of the restitution motion (i.e., the proposed
 restitution amount). We must avoid statutory interpretations
 that lead to illogical or absurd results. McCoy,
 ¶ 38, 442 P.3d at 389.

 ¶34
 True enough, in discussing the situation in which the
 determination of the amount of restitution must be deferred,
 subsection (1)(b) doesn't refer to the court or the
 prosecution. It simply states that "the specific amount
 of restitution shall be determined within the
 ninety-one days immediately following" the judgment of
 conviction. § 18-1.3-603(1)(b) (emphasis added). The use
 of the passive voice in the phrase "shall be
 determined" throws a monkey wrench into the analysis and
 puts the parties at loggerheads. But we're required to
 read that phrase in context, see McCulley, ¶
 10, 463 P.3d at 257, and unlike subsection (2), which focuses
 on the prosecution's obligation, subsection (1)(b) is all
 about the court's obligation. Subsection (1) outlines the
 four different types of restitution orders available to the
 court. And subsection (1)(b) specifically authorizes the
 court to preliminarily require the defendant to pay
 restitution and to table the determination of the amount of
 restitution.

 ¶35
 The fact that, as Judge Berger correctly pointed out,
 subsection (1)(b) requires a good cause showing,
 instead of a good cause finding, doesn't move
 the

 needle in the People's favor. To be sure, the former
 generally describes something a party must do while the
 latter always describes something the court must do. But
 here, reading subsection (1)(b) in context demonstrates that
 the General Assembly intended that the court, not the
 prosecution, make the requisite showing. Nothing in
 subsection (1) relates to the prosecution. That subsection
 deals with orders, and the prosecution doesn't have
 authority to enter orders-only the court does. And, given our
 conclusion that subsection (1)(b) concerns the court's
 deadline, it makes sense that it's the court that must
 show good cause to extend that deadline.

 ¶36
 Subsection (3)(a) of the statute is equally unavailing for
 the People. That subsection merely permits a court to
 increase an order of restitution "if additional victims
 or additional losses," not known when the order of
 restitution was entered, "are later discovered and the
 final amount of restitution due has not been set by the
 court." § 18-1.3-603(3)(a). By way of example,
 subsection (3)(a) may apply in a situation in which the court
 has entered a subsection (1)(b) order preliminarily requiring
 a partial amount of restitution but deferring the final
 amount of restitution. Subsection (3)(a), however, creates no
 exception to the deadline in subsection (1)(b). Hence, even
 when subsection (3)(a) is invoked to increase the amount of
 restitution required by a preliminary restitution order, the
 court must determine the final amount of restitution within
 ninety-one days of the judgment

 of conviction or within whatever expanded time period the
 court has established upon a finding of good
 cause.[11]

 ¶37
The People insist, though, that interpreting section
 18-1.3-603 as the division did here generates tension between
 subsection (1)(b) and subsection (2) because it imposes a
 single deadline on both the prosecution and the court. If a
 prosecutor submits the information in support of a motion for
 restitution on the last day of the ninety-one-day deadline in
 subsection (2), posit the People, "it will usually be
 impossible for the district court to rule on the restitution
 request within the same period, particularly because the
 court will need to afford the defendant an opportunity to
 respond." Thus, urge the People, it doesn't make
 sense to declare that the same ninety-one-day deadline
 governs both the prosecution's obligation

 to submit the proposed amount of restitution and the
 court's obligation to determine the amount of
 restitution.

 ¶38
The People's position, which coincides with the trial
 court's rationale, has intuitive appeal. Nevertheless,
 the tension the People complain about is a byproduct of the
 way the restitution statute was drafted. As we acknowledged
 from the get-go, the statute is not a model of clarity.
Inartful drafting by the legislature, however, doesn't
 give us carte blanche to rewrite a statute. See DePierre
 v. United States, 564 U.S. 70, 82 (2011) ("That we
 may rue inartful legislative drafting, however, does not
 excuse us from the responsibility of construing a statute as
 faithfully as possible to its actual text."). Whatever
 practical challenges may exist as a result of particular
 phrasing in a statute, the proper remedy is legislative
 action, not judicial fiat. Hence, so long as section
 18-1.3-603 remains in effect, we are oathbound to construe it
 as written. See McCulley, ¶ 10, 463 P.3d at
 257.

 ¶39
 Giving the words and phrases in section 18-1.3-603 their
 plain and ordinary meaning, and reading those words and
 phrases in context, we conclude that the ninety-one-day
 deadline in subsection (1)(b) refers to the court's
 deadline to determine the amount of restitution the defendant
 must pay. Further, under the plain and ordinary meaning of
 the language in subsection (1)(b), the court may extend that
 deadline only for good cause.

 ¶40
We next conclude, based on the plain and ordinary meaning of
 the words and phrases in subsection (1)(b), that any finding
 of good cause must be made expressly and before the
 court's deadline expires. The same holds true for the
 prosecution's deadline in subsection (2): Given the plain
 and ordinary meaning of the words and phrases in that
 subsection, any finding of extenuating circumstances to
 extend the prosecution's ninety-one-day deadline must be
 made expressly and before the deadline expires.

 ¶41
We recognize that this interpretation of section 18-1.3-603
 has the potential to lead to an undesirable result. As Judge
 Berger pointed out, it's possible that a defendant could
 avoid paying restitution solely because the court failed to
 comply with its deadline under subsection
 (1)(b).[12] But we have unwavering confidence that
 our trial courts will comply with the subsection (1)(b)
 deadline when applicable.

 ¶42
 Besides, the interpretation advanced by the People would risk
 rendering the court's deadline in subsection (1)(b)
 meaningless. What's the point of enacting the deadline in
 subsection (1)(b) if the court can be deemed to have
 impliedly extended it in a case like this one? Asked
 differently, what purpose does the deadline in subsection
 (1)(b) serve if, almost a year after it expires, a court may
 retroactively find good cause for extending it based on
 nothing more than the fact that it inadvertently set a
 briefing schedule that exceeded it?

 ¶43
 In enacting subsection (1)(b), the legislature was clearly
 concerned with the length of time it was taking trial courts
 to finalize restitution orders and, by extension, how long
 victims were waiting to receive restitution. See
§ 18-1.3-601(1)(e), C.R.S. (2021) ("An effective
 criminal justice system requires timely restitution
 to victims of crime . . . in order to lessen the financial
 burdens inflicted upon them, to compensate them for their
 suffering and hardship, and to preserve the individual
 dignity of victims." (emphasis added)); see
 also § 18-1.3-601(1)(g)(II) ("The purposes of
 this part 6 are to facilitate . . . [t]he effective and
 timely assessment, collection, and distribution of
 restitution . . . ." (emphasis added)). Our task in
 interpreting subsection (1)(b) is to give effect to the
 General Assembly's intent. Ross, ¶ 23, 479
 P.3d at 915. Avoiding the possibility of an undesirable
 result by essentially nullifying the deadline in subsection
 (1)(b) would

 be tantamount to disregarding the legislature's
 intent.[13] Again, to the extent that there are
 problems with the current statute, they should be brought to
 the attention of our colleagues in the legislature.

 ¶44
 Based on the foregoing conclusions, we detail below how we
 envision the prosecution, the defendant, and the trial court
 judge proceeding at a sentencing hearing during which the
 court orders the defendant to pay restitution but defers the
 specific amount:

The Prosecution

The prosecution should make a motion for restitution before
 or during the sentencing hearing.[14] If the prosecution has
 already determined the proposed amount of restitution, that
 information

 should be included in the motion. If the proposed amount of
 restitution is not yet available and the prosecution informs
 the court that it plans to submit that information within
 ninety-one days, it should give an estimate of when that will
 occur. In the event the prosecution needs more than
 ninety-one days to submit the proposed amount of restitution,
 it will have to present extenuating circumstances warranting
 an extension of that time period. As part of such a request,
 the prosecution should provide an estimate of how much
 additional time it needs. (As we mentioned earlier, although
 not ideal, a request for an extension of the
 prosecution's deadline may be filed after the sentencing
 hearing.)

The Defendant

If the prosecution's motion contains the proposed amount
 of restitution, the defendant should inform the court whether
 he or she objects to the motion and is requesting an
 opportunity for briefing, a hearing, or both. In the event
 the prosecution needs more time to submit the proposed amount
 of restitution, the defendant should advise the court whether
 he or she objects to a subsection (1)(b) preliminary
 restitution order.[15] Assuming there is no objection to such
 an order or that any objection is overruled, the defendant
 should tell the court how he or she intends to proceed.
Absent an agreement regarding the yet-to-be-determined
 proposed amount of restitution, the defendant should convey
 an intent to oppose whatever proposed

 amount of restitution the prosecution may eventually request
 or take a wait-and-see posture pending the submission of the
 proposed amount of restitution. Of course, if the prosecution
 seeks an extension of its ninety-one-day deadline in
 subsection (2), the defendant may counter any contention
 regarding the existence of extenuating circumstances.

The Trial Court Judge

Based on the information provided by the parties, the trial
 court judge should decide whether good cause exists to extend
 the court's ninety-one-day deadline under subsection
 (1)(b). (As we mentioned earlier, although not ideal, the
 court's deadline may be extended after the sentencing
 hearing.) If the judge has found that extenuating
 circumstances exist justifying an extension of the
 prosecution's deadline, he or she will clearly be able to
 find good cause to extend the court's deadline.
Similarly, if the defendant requests briefing and a hearing,
 there may be circumstances (e.g., the court's docket,
 counsel's schedules, or the complexity of the dispute)
 that warrant a finding of good cause for extending the
 court's deadline. Even without such a request, however,
 it's possible that there will be good cause to extend the
 court's deadline. For example, if the prosecution advises
 that it needs ninety-one days (or close to it) to submit the
 proposed amount of restitution and the defendant is uncertain
 whether he or she will object to that proposed amount, there
 may well be good cause for extending the court's
 deadline. Regardless of how the judge proceeds, he or she
 should ensure that the mittimus reflects that restitution has
 been ordered but that the amount will be determined later
 (within ninety-one days or within whatever timeframe has been
 established based on a finding of good cause). And,
 thereafter, the judge should update the mittimus as
 appropriate.

 C.
Application

 ¶45
 Here, the trial court determined the amount of restitution
 almost a year after the judgment of conviction and long after
 the ninety-one-day deadline in subsection (1)(b) expired. And
 it did so without making an express and timely

 finding of good cause for extending that deadline. Neither
 the prosecutor's request to have the issue of restitution
 (in its entirety) "remain open" for ninety-one days
 nor the court's decision to grant that request could
 justify extending the court's deadline to determine the
 amount of restitution under subsection (1)(b). Accordingly,
 the division correctly concluded that by the time the trial
 court ordered Weeks to pay restitution, it lacked authority
 to do so.

 III.
Conclusion

 ¶46
We infer from the restitution statute that the legislature
 expects litigants and judges to be prepared to address the
 issue of restitution at sentencing hearings. At such a
 hearing, a judge must enter one or more of four types of
 restitution orders. Reserving the issue of restitution in its
 entirety until a later date isn't one of them.

 ¶47
 Imperfect as our restitution statute may be, trial courts
 have to find a way to adhere to it. Because the trial court
 in this case violated the ninety-one-day deadline in
 subsection (1)(b) to determine the amount of restitution, the
 division correctly vacated the restitution order. We
 therefore affirm and remand for further proceedings
 consistent with this opinion.[16]

---------

Notes:

[1] Compare People v. Weeks, 2020
 CO A 44, ¶¶ 12-13, 490 P.3d 672, 675, with
 People v. Perez, 2020 COA 83, ¶¶ 30-37, 490
 P.3d 768, 773-75.

[2] A judgment of conviction consists of
 "a recital of the plea, the verdict or findings, the
 sentence, the finding of the amount of presentence
 confinement, and costs, if any . . ., the finding of the
 amount of earned time credit," if any, "an order or
 finding regarding restitution as required by section
 18-1.3-603, . . . and a statement that the defendant is
 required to register as a sex offender, if applicable."
Crim. P. 32(b)(3)(I).

[3] Under subsection (2), the
 "information" in support of a motion for
 restitution also includes "the identities of the
 victims." § 18-1.3-603(2). We refer only to the
 proposed amount of restitution in this opinion for two
 reasons: (1) the identities of the victims have no relevance
 to the issues before us; and (2) to determine the proposed
 amount of restitution, the prosecution must necessarily
 determine the identities of the victims allegedly entitled to
 restitution.

[4] In requiring an express finding of
 extenuating circumstances to extend the prosecution's
 deadline and an express finding of good cause to extend the
 court's deadline, we don't mean to suggest that
 talismanic incantations are necessary. In both instances,
 substance controls over form.

[5] Unless we indicate otherwise, when we
 refer to a sentencing hearing in this opinion, we mean a
 hearing at which the court actually sentences the defendant.
Neither deadline in section 18-1.3-603 is triggered absent
 imposition of the sentence because the sentence is a critical
 component of the judgment of conviction. See Crim.
 P. 32(b)(3)(I).

[6] At the time of the sentencing hearing,
 the court had already granted the prosecution's motion
 for restitution in the codefendant's case.

[7] To be clear, the prosecution
 doesn't need the court's permission to submit the
 information in support of a motion for restitution within
 ninety-one days of the judgment of conviction, so long as
 that information isn't available before the judgment of
 conviction. See § 18-1.3-603(2). It's the
 extension of that ninety-one-day period that
 requires a request-one supported by extenuating
 circumstances. Id. In this case, the prosecution
 didn't request, and the court didn't grant, an
 extension of that ninety-one-day period.

[8] We granted certiorari to review the
 following issues:

1. Whether the court of appeals erred in holding that
 section 18-1.3-603(1)(b), C.R.S. (2019), mandates that the
 trial court order a specific amount of restitution within
 ninety-one days of conviction, unless good cause exists to
 extend that deadline.

2. Assuming the ninety-one-day deadline in section
18-1.3-603(1)(b), C.R.S. (2019), refers to the court's
 obligation to determine the restitution amount, whether the
 court of appeals erred in concluding that the trial
 court's extension of the prosecution's deadline under
 section 18-1.3-603(2), C.R.S. (2019), was insufficient to
 establish "good cause" for the court's
 extension of its own deadline for issuing a restitution
 order.

[9] In Sanoff v. People, 187 P.3d
 576, 578-79 (Colo. 2008), we determined that, since a
 judgment of conviction becomes a final and appealable order
 with the inclusion of any of the four types of restitution
 orders enumerated in subsection (1), a defendant's
 conviction becomes a final and appealable judgment of
 conviction upon entry of a preliminary restitution order
 under subsection (1)(b), even though the order doesn't
 include the amount of restitution. We further concluded there
 that the restitution statute necessarily contemplates the
 possibility of a second proceeding-within either ninety-one
 days or, upon a showing of good cause, a longer time
 period-that would produce a second final, appealable order.
Id. at 578.

[10] Though the parties incorrectly
 assume that the deadline in subsection (2) governs the filing
 of a motion for restitution (as opposed to the filing of the
 information in support of such a motion), they concur that
 subsection (2) controls the prosecution's obligation with
 respect to restitution.

[11] Subsection (1)(b) "contains
 nothing actually precluding the court from making
 findings" at a sentencing hearing "with regard to
 particular victims or losses of which the prosecution is
 aware, while reserving until a later date . . . findings with
 regard to other victims or losses of which the prosecution is
 not yet aware." Meza v. People, 2018 CO 23,
 ¶ 14, 415 P.3d 303, 308. The statutory scheme expressly
 "allows for specific amounts of restitution to be
 determined and ordered" at a sentencing hearing,
 "without their necessarily representing the 'final
 amount' to be set by the court, giving meaning to the
 provision of [subsection] (3)(a) allowing an increase in
 restitution until the setting of a final amount."
Id. at ¶ 15, 415 P.3d at 308. In the absence of
 an order pursuant to subsection (1)(b) or a subsequent order
 pursuant to subsection (3)(a), however, "the statute
 does not purport to empower the sentencing court to set an
 amount of restitution following entry of the judgment of
 conviction in question." Id; accord People v.
 Belibi, 2018 CO 24, ¶ 8, 415 P.3d 301, 303.

[12] Even when the court loses authority
 to order a defendant to pay restitution, the victim's
 losses might be compensable under the Crime Victim
 Compensation Act. See § 24-4.1-109, C.R.S.
(2021). As we explained in People v. Nelson, the
 "crime victim compensation fund," which was created
 by the Crime Victim Compensation Act, is meant to be
 "the payor of last resort." 2015 CO 68,
 ¶¶ 23, 27, 362 P.3d 1070, 1074, rev'd on
 other grounds, Nelson v. Colorado, 137 S.Ct.
 1249 (2017). If a victim "receives compensation from
 another source (such as restitution from the defendant), in
 addition to compensation from the fund, the victim must
 refund either the lesser sum or the amount of compensation
 that exceeds his losses." Id. at ¶ 27, 362
 P.3d at 1074.

[13] We are aware that the legislature
 directed us to "liberally" construe section
 18-1.3-603 to ensure that restitution is "ordered,
 collected, and disbursed" to victims of crime. §
 18-1.3-601(2). But this provision can't function as a
 green light to jettison the deadline in subsection (1)(b).
See Hazelwood v. Saul, 619 P.2d 499, 501 (Colo.
1980) ("To liberally construe the statute[] . . . is not
 to ignore entirely the requirements of [that]
statute[]."); see also Md. Cas. Co. v. Indus.
 Comm'n, 178 P.2d 426, 427 (Colo. 1947) ("[T]he
 provisions of the [statute] are to be liberally construed,
 nevertheless any liberal construction cannot be extended so
 as to clothe . . . reviewing courts with power to read [into]
the statute any provisions which are not contained
 therein.").

[14] We reiterate that, by the time of
 the sentencing hearing, the prosecution should know whether
 it is seeking restitution, even if the information related to
 the proposed amount isn't yet available. If, following
 entry of a preliminary restitution order under subsection
 (1)(b), the prosecution conducts further investigation and
 has a change of heart vis-à-vis its request for
 restitution, it should notify the court and the defendant of
 that decision. The court should then amend the mittimus
 accordingly.

[15] The legislature has declared that
 all persons found guilty of causing suffering and hardship to
 a crime victim are "under a moral and legal obligation
 to make full restitution to those harmed by their
 misconduct." § 18-1.3-601(1)(b). Consequently, in
 the vast majority of cases in which a defendant opposes a
 motion for restitution, the dispute centers on the proposed
 amount of restitution, not on whether the court may require
 the defendant to pay restitution. In the event, however, that
 there is an objection to a preliminary restitution order
 under subsection (1)(b), the court may rule on the objection
 after hearing from the defendant. In the rare case the court
 deems briefing, a hearing, or both necessary to resolve the
 objection, it will have to continue the sentencing hearing
 because it won't be able to enter any of the four types
 of restitution orders in subsection (1).

[16] To the extent that any of the
 following decisions from the court of appeals are
 inconsistent with this opinion, they are overruled:
 People v. Rice, 2020 COA 143, 478 P.3d 1276;
Perez, 2020 COA 83, 490 P.3d 768; People v.
 Knoeppchen, 2019 COA 34, 459 P.3d 679; People v.
 Madison, 2018 COA 62, 436 P.3d 544; People v.
 McLain, 2016 COA 74, 411 P.3d 1037; People v.
 Turecek, 2012 COA 59, 280 P.3d 73; People v.
 Rockne, 2012 COA 198, 315 P.3d 172; People v.
 Hill, 296 P.3d 121 (Colo.App. 2011); People v.
 McCann, 122 P.3d 1085 (Colo.App. 2005); Harman,
 97 P.3d 290.

---------