22CA1193 Peo v Salaz 10-24-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 22CA1193
Mesa County District Court No. 20CR73
Honorable Valerie J. Robison, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Adam Joseph Salaz,

Defendant-Appellant.

ORDER AFFIRMED IN PART, VACATED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division IV
Opinion by JUDGE HARRIS
Yun and Kuhn, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 24, 2024

Philip J. Weiser, Attorney General, Frank R. Lawson, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, M. Shelby Deeney, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Adam Joseph Salaz, appeals the trial court's restitution order. He contends that the court violated statutory requirements, depriving it of authority to enter the order, or, alternatively, that the court erred in determining the amount of restitution owed. We agree that the trial court erred by awarding restitution for a cell phone based on its replacement value. Otherwise, we affirm.

## I.    Background

¶ 2    The victim, who was an Uber driver, picked up Salaz for a ride he booked to downtown Grand Junction. During the ride, Salaz told the victim that he had a gun and ordered her to drive him to the desert. The victim managed to escape, and Salaz drove away in the victim's car. Salaz and the car were located the next day in New Mexico.

¶ 3    Salaz pleaded guilty under a plea agreement to second degree kidnapping, robbery, and second degree aggravated motor vehicle theft. The agreement required Salaz to pay restitution and provided that "[r]estitution shall remain open for a period of 91 days."

¶ 4    At the July 15, 2021, sentencing hearing, the prosecutor asked the court to enter a restitution order in the amount of $11,401.34 — $2,423.01 to the victim and $8,978.33 to the Crime Victim Compensation Board (CVCB). But he also said that the victim was engaged in "ongoing treatment" and might incur additional reimbursable expenses. For that reason, he asked the court to "leave restitution open for 91 days." Salaz objected to the "restitution amount" but not to liability for restitution generally, acknowledged that the parties had "agreed to keep restitution open," and requested a restitution hearing.

¶ 5    The court ordered that "[r]estitution will be open for a period of 91 days" and ordered the prosecution to file a restitution motion within sixty days. At the parties' urging, the court agreed to hold the restitution hearing ninety days later, on October 13.

¶ 6    The prosecution did not file a restitution motion within sixty days. Instead, on October 12, a newly assigned prosecutor filed a combined motion for restitution and for a continuance of the restitution hearing. The motion sought a couple of hundred dollars

2

less in restitution than had been requested at the sentencing hearing.

¶ 7 Counsel appeared for the scheduled restitution hearing the next day, but Salaz, who was incarcerated, did not. The prosecutor reiterated her request for a continuance. Defense counsel objected, but he also declined to waive Salaz's right to be present at the hearing and told the court that without Salaz, "I don't think we can move forward today."

¶ 8 The trial court found good cause to continue the hearing and extend the deadline for determining restitution. The court explained that it was "not going to have a restitution hearing" when Salaz had "request[ed] to be" present "and . . . he [wa]s not," and it further noted that the prosecutor had been assigned to the case only one day before the scheduled hearing.

¶ 9 The court rescheduled the hearing for December 2. After further delays, the cause of which are not relevant to this appeal, a two-day restitution hearing was completed in March 2022. In a thorough written order (the final restitution order), the court

ordered Salaz to pay $11,265.39 in restitution — the amount requested in the prosecution's October 12 motion.

## II. Trial Court's Authority to Enter the Order

¶ 10    Salaz contends that the final restitution order must be vacated based on the trial court's failure to comply with statutory requirements. We disagree.

### A. Legal Principles

¶ 11    Every judgment in a felony case must include "consideration of restitution," meaning it must include (a) an order fixing a specific amount of restitution; (b) an order requiring restitution but deferring the specific amount for up to ninety-one days; (c) an order fixing restitution and requiring the defendant to pay certain future costs; or (d) a finding that no restitution is owing. § 18-1.3-603(1)(a)-(d), C.R.S. 2024; *People v. Weeks*, 2021 CO 75, ¶ 29. Thus, under section 18-1.3-603(1)(b), the provision at issue here, the statute requires the judgment to include an order assigning *liability* for restitution, even if the amount is determined later. *See Sanoff v. People*, 187 P.3d 576, 578 (Colo. 2008).

¶ 12    Two statutory deadlines apply to the subsequent determination of the amount of restitution. Under section 18-1.3-

603(2), if the information is not available before sentencing, the prosecution has ninety-one days to submit the proposed amount of restitution to the court. *See Weeks*, ¶ 31; *People v. Brassill*, 2024 COA 19, ¶ 30. And under section 18-1.3-603(1)(b), the trial court also has ninety-one days to fix the amount of restitution owed. *Weeks*, ¶ 39. Both deadlines can be extended, however. As relevant here, the court may enter its restitution order after the ninety-one-day deadline if, before the deadline expires, it finds good cause for the delay. *Id.* at ¶ 5. But absent a timely good-cause finding, a trial court lacks authority to enter an order fixing the amount of restitution once the statutory deadline has expired. *Id.* at ¶ 45.

## B.    Application

¶ 13    Salaz contends that the trial court failed to comply with the restitution statute in two ways: first, it neglected to include in the judgment any order assigning liability for restitution and second, without a showing of good cause for the delay, it determined the amount of restitution beyond the ninety-one-day deadline. We discern no basis for vacating the final restitution order.

¶ 14    The record establishes that the trial court considered restitution at sentencing, recognized that Salaz owed some amount to the victim (who had by then submitted a request for restitution along with supporting documentation) and the CVCB, and, at defense counsel's request, deferred to a later date only a determination of the exact amount. Though the mittimus stated that "restitution is left open for 91 days," it also stated that Salaz "objects to restitution and requests a hearing" and included the hearing date and time. Thus, we disagree that the trial court impermissibly deferred the issue of restitution in its entirety. *See id.* at ¶ 30. By ordering the prosecution to submit a motion for restitution detailing amounts owed to the CVCB, granting the request for a hearing, and noting the defense's objection and hearing date on the mittimus, the court effectively assigned restitution liability to Salaz even if it did not use language from section 18-1.3-603(1)(b). *See People v. Tennyson,* 2023 COA 2, ¶ 37 (court's oral pronouncements at sentencing sufficiently assigned restitution liability even in the absence of any language on the judgment) (*cert. granted* Sept. 11, 2023).

¶ 15    But even if the court erred by failing to adequately note restitution liability on the judgment, the error does not require vacatur of the final restitution order.  The restitution statute distinguishes "an order assigning liability for restitution from a determination of the amount of restitution for which the defendant is liable."  *Sanoff*, 187 P.3d at 578.  Only the order assigning liability is a component of the judgment of conviction, which includes the defendant's sentence; the order fixing the amount of restitution is a separate appealable order.  *Id.*  Therefore, Salaz had to raise the alleged error in the judgment of conviction by filing an appeal within forty-nine days after the judgment was entered.  *See Weeks*, ¶ 30 n.9 ("[A] defendant's conviction becomes a final and appealable judgment of conviction upon entry of a preliminary restitution order . . . even [if] the order doesn't include the amount of restitution."); *see also* C.A.R. 4(b)(1).  The only reason he can raise the issue now is that the omission of a liability order in the judgment results in an illegal sentence that can be challenged at any time.  *See People v. Bowerman*, 258 P.3d 314, 316 (Colo. App. 2010) (the failure to make an initial finding concerning the

7

defendant's liability for restitution results in an illegal sentence); Crim. P. 35(a).

¶ 16     But an illegal sentence can also be corrected at any time. And the remedy for this particular error is to remand for the trial court to amend the mittimus to reflect the necessary order under section 18-1.3-603(1)(b), not to vacate the entirely separate final restitution order. *See Tennyson*, ¶ 31 ("[I]f a sentence is illegal because it does not contain the 'consideration of restitution' as required by section 18-1.3-603(1), the district court must correct it.").[1]

¶ 17     We also disagree that the court failed to comply with the ninety-one-day deadline to fix the amount of restitution. According to Salaz, the court improperly found good cause to continue the October 13 hearing based on the prosecution's late-filed restitution motion.

¶ 18     Whether good cause exists to extend section 18-1.3-603(1)(b)'s deadline is reviewed for an abuse of discretion. *People v. Weeks*, 2020 COA 44, ¶ 11, *aff'd*, 2021 CO 75. A court abuses its

---

[1] We decline to do that in this case, though, because Salaz does not argue that his sentence is illegal or seek correction of the error through a remand to amend the mittimus.

8

discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or when it misconstrues or misapplies the law. *Id.*

¶ 19    The ninety-one-day deadline expired on October 14.  During the October 13 proceedings, the court found "good cause to extend the restitution deadline until the hearing can be held and an order can be issued."  As the court had just explained, the hearing could not be held primarily because Salaz was not present and had not waived his right to be present.  The court also considered that a new prosecutor had just been assigned to the case.  The court's written order confirmed that the prosecutor's motion to continue the restitution hearing was granted "[f]or the reasons stated on the record at the hearing on October 13, 2021."  The court then reiterated its good cause finding, stating that there was "good cause to extend the time for entry of restitution" until it could rule on the motion.

¶ 20    In his reply brief, Salaz says his absence from the October 13 hearing did not constitute good cause to continue the hearing and extend the deadline for fixing restitution because it is "the prosecution's duty to produce an incarcerated defendant for

prosecution in court." But according to the court's finding in the final restitution order — a finding that Salaz does not challenge on appeal — defense counsel had not requested that the prosecution produce Salaz for the hearing. And there was no evidence that the prosecution knew Salaz intended to attend the hearing rather than waive his appearance. (In the end, Salaz appeared for the restitution hearing by Webex.)

¶ 21 Considering all of the circumstances, we conclude that the court did not abuse its discretion by finding good cause to continue the hearing and to extend the deadline for fixing the amount of restitution.

### III. Restitution Award

¶ 22 Alternatively, Salaz argues that the court erred in determining the amount of restitution owed by (1) adopting the CVCB's lost wages calculation; (2) finding that he proximately caused the damage to the victim's car; and (3) awarding the victim the replacement value, rather than the fair market value, of her cell phone and accessories. We agree in part with Salaz's third argument.

## A.    Legal Principles and Standard of Review

¶ 23    The trial court must order restitution for "any pecuniary loss suffered by a victim" and "proximately caused by" the defendant's conduct that can be "reasonably calculated and recompensed in money." § 18-1.3-602(3)(a), C.R.S. 2024. A "victim" includes any victim compensation board that has paid a victim compensation claim. § 18-1.3-602(4)(a)(IV). Proximate cause in the restitution context means a "cause which in natural and probable sequence produced the claimed injury and without which the claimed injury would not have been sustained." *People v. Dyson*, 2021 COA 57, ¶ 13 (citation omitted).

¶ 24    The prosecution bears the burden of proving, by a preponderance of the evidence, both the amount of restitution owed and that the victim's losses were proximately caused by the defendant. *People v. Perez*, 2017 COA 52, ¶ 10. "The preponderance of evidence standard only requires proof that 'the existence of a contested fact is more probable than its nonexistence.'" *Dyson*, ¶ 14 (quoting *People v. Taylor*, 618 P.2d 1127, 1135 (Colo. 1980)).

¶ 25    The appropriate standard of review in restitution cases depends on the issue the trial court decided and that we are reviewing. *People v. Barbre*, 2018 COA 123, ¶ 24. As a general matter, we review the trial court's factual findings for clear error and its legal conclusions de novo. *Martinez v. People*, 2024 CO 6M, ¶ 24. Because Salaz's challenge to the court's proximate cause finding is not a sufficiency claim, but rather a dispute with the court's interpretation of the evidence, we review the court's determination on that issue for clear error. *Id.* at ¶¶ 20-21, 32.

## B. Lost Wages

¶ 26    The evidence at the restitution hearing established that the CVCB paid the victim $7,878.33 in lost wages. The CVCB administrator testified that "lost wages are paid at 80% of gross wages lost." Where crime victims have "a variable kind of income," the CVCB asks for several months of earning statements "to establish . . . an average pay."

¶ 27    The victim in this case submitted documentation showing her gross income, expenses and fees, and net income for the three months before the offense — October, November, and December

12

2019. Her gross income was considerably higher in December than in October or November. The victim did not know whether her gross income for those months represented the total amount Uber collected for rides or the amount Uber paid her for the rides.

¶ 28 The court found that the prosecution had met its burden to prove that the victim lost $7,878.33 in lost wages.

¶ 29 In challenging the lost wages award on appeal, Salaz argues only that

> defense counsel elicited testimony and introduced evidence (including three exhibits) rebutting the accuracy of: the number of days of missed work; the accuracy of the comparable months used in the calculation; and the income — gross or net — used to determine what the victim had been paid by Uber.

¶ 30 In fact, though, there was no evidence admitted at the hearing of the number of missed work days for which the victim was paid or of which months of employment the CVCB used to calculate the victim's lost wages. (There was also no evidence that the victim's income in October and November was more representative of her average monthly income than her earnings in December, but only that she earned more in December. She testified that she worked

13

ninety hours a week during all three months.)  And while the evidence showed that the CVCB calculated lost wages using eighty percent of a victim's gross income, Salaz does not explain on appeal why the court erred by accepting this methodology.

¶ 31    On this record, and in light of Salaz's conclusory argument, we cannot say that the court clearly erred in ordering restitution to the CVCB in the amount of $7,878.33 for the victim's lost wages.

### C.    Insurance Deductible

¶ 32    The victim testified that after she recovered her car, she brought it to a body shop for repairs.  The body shop estimated the cost of repairs at over $4,700, but the victim testified that she paid only a $1,000 deductible.  The court ordered Salaz to reimburse the victim for the deductible.

¶ 33    On appeal, Salaz argues that the court clearly erred by finding that he caused more than $1,000 in damage to the car because photographs admitted at the hearing do not depict any significant damage.

¶ 34    The victim testified that after she jumped out of the car, the car rolled into a barbed wire fence, causing damage to the

14

"passenger side" of the car, "the front of the vehicle," and a wheel rim. She noted scratches on the bumper, on a panel, and on the headlights. She also testified that none of the repairs listed on the estimate were for damage that had occurred before the incident.

¶ 35    The evidence supported a finding that Salaz had caused the damage to the victim's car. To the extent the photographs and the testimony conflicted, it was up to the trial court to resolve the conflict. *See People v. Poe*, 2012 COA 166, ¶ 14 ("It is the fact finder's role to weigh the credibility of the witnesses, to determine the weight to give all parts of the evidence, and to resolve conflicts, inconsistencies, and disputes in the evidence.").

¶ 36    Because there is record support for its finding regarding damages, the court did not err by ordering restitution to the victim in the amount of her deductible.

### D.    Cell Phone and Headphones

¶ 37    The victim's cell phone and headphones were in the car when it was stolen, and those items were not recovered. At the time, the items were about two years old. The victim did not know the stolen

15

phone's fair market value. She bought a new (identical model) phone for $499.99 and new headphones for $150.

¶ 38 On appeal, Salaz argues that the trial court erred by awarding the replacement value of the phone and headphones because the prosecution failed to present evidence that these items were not readily replaceable at fair market value cost. He says that awarding the replacement cost put the victim in a better financial position than she would have been in had the crime not occurred. We agree in part.

¶ 39 In the restitution context, the value of property is determined by the victim's "actual, pecuniary loss" or the amount of money that will fulfill "the statutory purpose of simply making the victim whole to the extent practicable." *People v. Stafford*, 93 P.3d 572, 575 (Colo. App. 2004). Generally, awarding restitution based on the fair market value of an item will best fulfill the statute's goal to make the victim whole. "'[F]air market value' refers to the price that would be agreed on by a willing seller and a willing buyer under no compulsion to sell or buy." *People v. Henson*, 2013 COA 36, ¶ 31, *superseded by statute on other grounds as stated in Martinez, ¶¶ 15-*

16

17. Still, "a court can award restitution of a 'reasonable replacement value' — rather than being limited to recovery of fair market value — when the victim demonstrates that . . . she will need to replace an item that isn't readily replaceable at a fair market value cost." *People v. Knapp*, 2020 COA 107, ¶ 90.

¶ 40     The trial court reasoned that the victim was entitled to the replacement value of the cell phone because "[t]here was no testimony presented to indicate that the prior phone had a lower value than the replacement phone or that the replacement of the prior phone could have been achieved for a lower cost." We disagree with the court's reasoning for two reasons.

¶ 41     First, it is "common knowledge that in the field of [cell phone] technology[,] advances are constantly being made so that used equipment depreciates in value over relatively short periods of time." *In re Christopher R.*, 704 A.2d 443, 445 (Md. 1998) (reversing restitution order based on replacement value of stolen computers). Thus, the victim's testimony that the cell phone was two years old when it was stolen necessarily established that it had a lower value than a brand new phone.

17

¶ 42    Second, the prosecution bears the burden to prove the amount of restitution — that is, the money necessary to compensate the victim for her actual pecuniary loss.  In this case, then, the prosecution, not Salaz, had to show that the victim was entitled to $500 to compensate her for the loss of her two-year-old cell phone.  In other words, the prosecution had to demonstrate that the victim could not "readily replace[] [the stolen phone] at a fair market value cost," *Knapp*, ¶ 90, but it presented no evidence of the phone's fair market value or of any efforts the victim made to obtain a comparable used cell phone.  Nor can we say that the court could have "reasonably assumed that there [is] not a broad and active market for used [cell phones] comparable to [the one] stolen." *Stafford*, 93 P.3d at 576.

¶ 43    Therefore, we conclude that the trial court erred by awarding restitution for the cell phone based on its replacement value.

¶ 44    But we reach the opposite conclusion regarding the headphones.  We think the trial court could reasonably have assumed that there is no broad active market for two-year-old wired headphones.

18

## IV. Disposition

¶ 45 The order is affirmed in part and vacated in part, and the case is remanded to the trial court. On remand, the court is directed to deduct $499.99 from the final restitution order and amend the mittimus accordingly.

JUDGE YUN and JUDGE KUHN concur.